John M. Desmarais (CA SBN 320875)
Peter C. Magic (CA SBN 278917)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901
Email: jdesmarais@desmaraisllp.com
Email: pmagic@desmaraisllp.com

Jennifer M. Przybylski (*pro hac vice*)
Asim Zaidi (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jprzybylski@desmaraisllp.com
Email: azaidi@desmaraisllp.com

*Counsel for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALD SOCIAL LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>APPLE INC.,<br><br>          Defendant. | Case No. 3:23-cv-02695-JSC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEY FEES AND SANCTIONS**<br><br>**Oral Argument Requested**<br>**Jury Trial Demanded**<br><br>Date: November 30, 2023<br>Time: 10:00 a.m.<br>Courtroom: 8 - 19th Floor<br>Judge Jacqueline S. Corley |

**<u>TABLE OF CONTENTS</u>**

**<u>Pages</u>**

NOTICE OF MOTION AND MOTION FOR ATTORNEY FEES ................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION ...............................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................................3

        A.        ALD and Ramey LLP .............................................................................................3

        B.        Apple moved to dismiss the original complaint, told ALD about flaws regarding venue and plausibility in its original complaint, and moved to transfer this case.........................................................................................................4

        C.        The Court dismissed ALD's original complaint with leave to amend, and then ALD filed an amended complaint relying on the same facts that the Court ruled did not support a plausible infringement claim. .................................................5

        D.        Apple alerted ALD to the deficiencies in its amended complaint before moving to dismiss that complaint. ...............................................................................6

III.    LEGAL STANDARD...........................................................................................................7

        A.        An award of attorney fees under 35 U.S.C. § 285 is appropriate in "exceptional cases."...................................................................................................7

        B.        The Court may exercise its inherent authority to sanction a party or its lawyers for bad faith conduct. .............................................................................................7

        C.        Pursuant to 28 U.S.C. § 1927, an attorney who unreasonably and vexatiously multiplies proceedings may be held liable for attorney fees....................................8

IV.    ARGUMENT .......................................................................................................................8

        A.        The Court should award Apple—the prevailing party—reasonable attorney fees under 35 U.S.C. § 285 because ALD and Ramey LLP filed and knowingly prolonged an exceptionally weak case....................................................8

                1.        Apple is the prevailing party...........................................................................8

                2.        This case was exceptional from its inception due to ALD and Ramey LLP failing to conduct an adequate pre-suit investigation. ......................9

                3.        Alternatively, this case became exceptional following the Court's July 2023 Order dismissing the original complaint for implausibility.............12

        B.        The court should exercise its inherent authority to award Apple reasonable attorney fees because ALD, ███, and Ramey LLP pursued the case in bad faith. ........................................................................................................................13

**Pages**

C.   William Ramey and Susan Kalra of Ramey LLP should be sanctioned for vexatiously multiplying the proceedings under 28 U.S.C. § 1927. .......................16

D.   ███████████████████ ALD, should be joined and held liable.............17

E.   The Court should award Apple $742,774.88 in fees. ...............................19

   1.   35 U.S.C. § 285 permits courts to award *reasonable* attorney fees—it does not limit the method of assessing fee requests to the lodestar...........20

   2.   Apple's counsel's way of computing flat fees demonstrates that Apple's requested fee of $742,774.88 is reasonable.................................21

   3.   Comparable cases demonstrate that Apple's requested fee of $742,774.88 is reasonable. ...........................................................22

   4.   The AIPLA Report of the Economic Survey demonstrates that Apple's requested fee of $742,774.88 is reasonable. ...............................24

V.   CONCLUSION.................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*ALD Social LLC v. Google LLC*,
  No. 22-cv-972-FB, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023)......................................2, 4

*ALC Social LLC v. T-Mobile US, Inc.*,
  No. 6-22-cv-00973-FB, Dkt. 18 (W.D. Tex. Sep. 30, 2023) .................................................2, 4

*ALC Social LLC v. Verizon Communications Inc.*,
  No. 6:22-cv-01011-FB, Dkt. 18 (W.D. Tex. Sep. 30, 2023) .................................................2, 4

*ALC Social LLC v. Verkada, Inc.*,
  No. 23-cv-00049-JSC, 2023 WL 1802418 (N.D. Cal. Feb. 7, 2023) ....................................2, 4

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  851 F.3d 1302 (Fed. Cir. 2017).............................................................................................11

*Blixseth v. Yellowstone Mountain Club, LLC*,
  796 F.3d 1004 (9th Cir. 2015) ................................................................................................8

*Brilliant Optical Solutions, LLC v. Comcast Corporation*,
  2015 WL 1476691 (D. Colo. May 27, 2015)..........................................................................23

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................................................8

*City of Burlington v. Dague*,
  505 U.S. 557 (1992)...............................................................................................................20

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)...............................................................................................................15

*Craig v. PopMatters Media, Inc.*,
  No. 18-CV-1713-SMY, 2022 WL 3026856 (S.D. Ill. Aug. 1, 2022).........................14, 15, 16

*Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*,
  14-cv-1688 DMS, 2015 WL 11570939 (S.D. Cal. Dec. 11, 2015) .......................................23

*Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*,
  No. 14-cv-1688 DMS (KSC), Dkt. 164 (S.D. Cal. Aug. 12, 2016)..................................22, 23

*Edwards v. Vemma Nutrition*,
  835 F. App'x 174 (9th Cir. 2020) ..........................................................................................17

*Electronic Comm'cn Technologies, LLC v. ShoppersChoice.com, LLC*,
  No. 9:16-cv-81677, Dkt. 131 (S.D. Fl. Oct. 30, 2020) ..........................................................23

**Pages**

*Electronic Comm'cn Technologies, LLC v. ShoppersChoice.com, LLC,*
No. 9:16-cv-81677, Dkt. 133 (S.D. Fl. Nov. 23, 2020) ..........................................................23

*EMED Techs. Corp. v. Repro-Med Sys., Inc.,*
No. 1:18-cv-05880, Dkt. 167 (S.D.N.Y. Nov. 12, 2019)........................................................4

*Eon-Net LP v. Flagstar Bancorp,*
653 F.3d 1314 (Fed. Cir. 2011)....................................................................................11, 16

*EscapeX IP LLC v. Google LLC,*
No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) .....................3, 4, 11, 24

*Evon v. L. Offs. Of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) .................................................................................................7

*Fare Techs., LLC v. Uber Techs., Inc.,*
No. W-22-CV-00317-ADA, 2023 WL 2258334 (W.D. Tex. Feb. 27, 2023)........................14

*Fid. Land Tr. Co., LLC v. Mortg. Elec. Registration Sys., Inc.,*
No. 6:12-CV-1367-ORL-37, 2012 WL 6720994 (M.D. Fla. Dec. 4, 2012)..........................16

*Fink v. Gomez,*
239 F.3d 989 (9th Cir. 2001) ..............................................................................................7, 8

*Gibson v. Credit Suisse Grp. Sec. (USA) LLC,*
733 F. App'x 342 (9th Cir. 2018) .........................................................................................14

*Goldfarb v. Virginia State Bar,*
421 U.S. 773 (1975)..............................................................................................................21

*Hawk Tech. Sys., LLC v. Castle Retail, LLC,*
No. 2:20-cv-2766, 2023 WL 5826978 (W.D. Tenn. Sept. 8, 2023) ......................................12

*ICU Med., Inc. v. Alaris Med. Sys., Inc.,*
558 F.3d 1368 (Fed. Cir. 2009).................................................................................................7

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.,*
No. 08-cv-7587, 2009 WL 9137315 (C.D. Cal. Dec. 14, 2009)............................................24

*Internet Media Interactive Corp. v. Shopify Inc.,*
No. CV 20-416 (MN), 2020 WL 6196292 (D. Del. Oct. 22, 2020) ........................................8

*Iris Connex, LLC v. Dell, Inc.,*
235 F. Supp. 3d 826 (E.D. Tex. 2017)...................................................................................19

*Keith Manufacturing Co. v. Butterfield,*
955 F.3d 936 (Fed. Cir. 2020)..................................................................................................8

*Kelly v. TD Bank USA, N.A.,*
2022 WL 4791981 (D. Ore. Sept. 6, 2022)..............................................................................8

**Pages**

*Kilopass Tech., Inc. v. Sidense Corp.*,
  82 F. Supp. 3d 1154 (N.D. Cal. Mar. 11, 2015) ...............................................................20, 24

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ...............................................................................................7

*Lindy Bros. Builders Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973)................................................................................................21

*Lippert Components Manufacturing, Inc. v. Mor/Ryde Int'l Inc.*,
  No. 3:14-cv-1999, 2016 WL 9954302 (N.D. Ind. May 20, 2016)..........................................17

*NetSoc, LLC v. Oath Inc.*,
  No. 18-cv-12267 (RA), 2020 WL 7264162 (S.D.N.Y. Feb. 25, 2021) ...................................4

*New Alaska Dev. Corp. v. Guetschow*,
  869 F.2d 1298 (9th Cir. 1989) ........................................................................................8, 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..............................................................................................................7

*Pacific Contact Labs., Inc. v. Solex Labs., Inc.*,
  209 F.2d 529 (9th Cir. 1953) ..............................................................................................20

*Paeco, Inc. v. Applied Moldings, Inc.*,
  No. 71-1100, 1978 WL 21466 (E.D. Pa. Oct. 16, 1978) ......................................................21

*Pascual v. Wells Fargo Bank, N.A.*,
  No. 4:13-cv-02005, 2014 WL 582264 (N.D. Cal. Feb. 13, 2014).............................15, 16, 17

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010)............................................................................................................21

*Phigenix, Inc. v. Genentech, Inc.*,
  No. 15-cv-01238-BLF, 2018 WL 3845998 (N.D. Cal. Feb. 24, 2020) ............................17, 19

*Phonometrics, Inc. v. Westin Hotel Co*,
  350 F.3d 1242 (Fed. Cir. 2003)............................................................................................8

*R. Prasad Indus. V. Douglas*,
  673 F. App'x 676 (9th Cir. 2016) ........................................................................................17

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  41 F.4th 1372 (Fed. Cir. 2022).............................................................................................7

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  No. 19-cv-6359, 2020 WL 7889048 (C.D. Cal. Nov. 23, 2020) ...........................................23

*Roadway Exp., Inc. v. Piper*,
  447 U.S. 752 (1980)........................................................................................................14, 15

**Pages**

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*,
No. 2:15-cv-01431, Dkt. 104 (E.D. Tex. Nov. 8, 2017) ..........................................23

*SAP Am., Inc. v. InvestPic, LLC*,
No. 3:16-CV-02689-K, 2021 WL 1102085 (N.D. Tex. Mar. 23, 2021)...........................16, 19

*Segan LLC v. Zynga Inc.*,
131 F. Supp. 3d 956 (N.D. Cal. 2015) ..................................................10

*Smartflash LLC v. Apple Inc.*,
680 Fed. Appx. 977 (Fed. Cir. 2017).....................................................25

*Smartflash LLC v. Apple Inc.*,
No. 6:13-cv-447, Dkt. 503 (E.D. Tex. Feb. 24, 2015)...............................24

*Straight Path IP Group, Inc. v. Cisco Systems*,
No. 16-cv-03463-WHA, 2020 WL 2539002 (N.D. Cal. May 19, 2020).........................20, 21

*Sub Zero Franchising, Inc. v. Frank Nye Consulting LLC, d/b/a The Arctic Scoop et al*,
No. 2:15-cv-00821, Dkt. 83 (D. Utah April 27, 2018) ..............................23

*Talon, Inc. v. Union Slide Fastener, Inc.*,
266 F.2d 731 (9th Cir. 1959) ..........................................................20

*Thermolife Int'l LLC v. GNC Corp.*,
922 F.3d 1347 (Fed. Cir. 2019).........................................................11

*Traxcell Techs., LLC v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951 (E.D. Tex. 2022) ......................................12

*Traxcell Techs. v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP (E.D. Tex. Nov. 10, 2022)........................................4

*Traxcell Techs. v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP (E.D. Tex. Jan. 19, 2023) ......................................18

*Traxcell Techs., LLC v. Google LLC*,
No. 6:21-CV-1312-ADA, 2022 WL 3593054 (W.D. Tex. Aug. 22, 2022).....................14, 15

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*,
No. 2:17-cv-42-RWS-RSP, 2017 WL 6559256 (E.D. Tex. Dec. 21, 2017)..........................11

*Traxcell Techs. v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2022 WL 18507378 (E.D. Tex. Dec. 22, 2022)...............4, 18

*Verna IP Holdings, LLC v. Alert Media, Inc.*,
No. 6:21-cv-00422-ADA, 2023 WL 5918320 (W.D. Tex. Sept. 11, 2023) .............................4

**Pages**

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000).................................................................10

*Wisc. Alumni Res. Found. v. Apple Inc.*,
    3:14-cv-00062, Dkt. 657 (W.D. Wisc. Oct. 26, 2015)....................................24

*Wisc. Alumni Res. Found. v. Apple Inc.*,
    905 F.3d 1341 (Fed. Cir. 2018).............................................................24

*WPEM, LLC v. SOTI Inc.*,
    No. 2:18-cv-00156, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), *affirmed in*
    *WPEM, LLC v. SOTI Inc.*, 837 Fed. Appx. 773 (Fed. Cir. 2020).......................4, 11

*ZT IP, LLC v. VMware*,
    3:22-cv-0970, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023)....................4, 11, 14, 15

*ZT IP, LLC v. VMWare, Inc.*,
    3:22-cv-00970, Dkt. 46 (N.D. Tex. Aug. 11, 2023)......................................18

### STATUTES

28 U.S.C. § 1927...................................................................*passim*

35 U.S.C. § 70......................................................................20

35 U.S.C. § 101.....................................................................23

35 U.S.C. § 285....................................................................*passim*

### RULES

Fed. R. Civ. P. 7.1.................................................................18

Fed. R. Civ. P. 11.................................................................*passim*

Fed. R. Civ. P. 11(b)...............................................................2

Fed. R. Civ. P. 19.................................................................17

Fed. R. Civ. P. 20(a)(2)............................................................19

Fed. R. Civ. P. 37.................................................................11

Fed. R. Civ. P. 41(a)(1)(A)(i)......................................................8

Fed. R. Civ. P. 41(a)(1)(A)(ii).....................................................8

Fed. R. Civ. P. 69.................................................................18

L.R. 54-5..........................................................................1

1

## NOTICE OF MOTION AND MOTION FOR ATTORNEY FEES

2       PLEASE TAKE NOTICE THAT, on November 30, 2023, at 10:00 a.m., before the Honorable

3 Jacqueline S. Corley, at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA

4 94102, Courtroom 8, 19th Floor, Defendant Apple Inc. moves the Court under 35 U.S.C. § 285, 28

5 U.S.C. § 1927, and the Court's inherent powers for an order granting Apple its reasonable attorney

6 fees incurred in this litigation.[1]  Apple requests that the Court hold ALD and its counsel—Ramey LLP,

7 William Ramey, and Susan Kalra—jointly and severally liable for the fees.  Apple further requests

8 that the Court join ███████████ and hold it jointly and severally liable for the fees. Pursuant to L.R.

9 54-5, counsel for Apple conferred with counsel for ALD on October 16, 2023.  The parties were unable

10 to resolve Apple's claims for exceptionality or the amount of fees sought.  Przybylski Decl. ¶ 6-7.

11

## MEMORANDUM OF POINTS AND AUTHORITIES

12 **I.**     **INTRODUCTION**

13       ALD and its counsel—Ramey LLP—should pay Apple's attorney fees because they filed, and

14 then prolonged, a frivolous case.  ALD's and Ramey LLP's behavior throughout this case leaves no

15 question that they sought to extract a nuisance settlement without regard to the case's obvious

16 baselessness.  ALD and its attorneys began with a complete disregard for venue-related facts, filing

17 their original complaint (OC) in a district where the Exposure Notification Service they accused

18 simply was never available, then failed even to respond to Apple's motion to transfer.  They were

19 equally cavalier with the merits.  Following the inevitable transfer, this Court dismissed ALD's

20 original complaint for failing to reach even the threshold level of plausibility—a rare event in patent

21 cases—on the ground that informing an ***individual*** of possible exposure to COVID-19 from another

22 ***individual*** could not plausibly be a "***crowd*** risk."  Neither ALD nor its counsel can pretend ignorance

23 of these errors; Apple alerted them to the obvious flaws in this case—flaws any competent pre-suit

24 investigation would have revealed—by motion in November 2022 and by letter in February 2023.  Yet

25 both ALD and Ramey LLP ignored those warnings.  Next, the Court's order granting Apple's motion

26 to dismiss again raised red flags that would cause any reasonable plaintiff and its counsel to decide

27

28 ───────────────────

[1] All numerical exhibits (*e.g.*, Ex. 1, Ex. 2) are attached to the declaration of Jennifer M. Przybylski. All alphabetical exhibits (*e.g.*, Ex. A, Ex. B) are attached to the declaration of Peter C. Magic.

1    they could not proceed further.  But not ALD and Ramey LLP.  Undeterred, ALD's counsel took the

2    inexcusable step of filing an amended complaint (FAC) that accused the ***same functionality*** and relied

3    on ***same relevant facts*** the Court found inadequate in the original complaint.

4           Only after Apple moved to dismiss the FAC and served ALD and its counsel with a motion for

5    sanctions for violating Rule 11(b) by the filing of that complaint did ALD dismiss the case.  ALD

6    dismissed the case with prejudice only after the Court maintained its hearing on the motion to dismiss

7    "[g]iven that Plaintiff's dismissal was <u>without</u> prejudice."  (Dkt. 58 (emphasis original).)

8           This entire litigation could have been avoided had Ramey LLP and ALD done the mandatory

9    pre-suit investigation to ensure it had fair bases for filing.  Instead, ALD and Ramey LLP required

10   Apple to move to transfer and move to dismiss twice, then they held open the possibility of future suits

11   against Apple until the Court indicated it was dissatisfied with ALD's dismissal without prejudice.

12   For this exceptionally frivolous case, and Ramey LLP's vexatious prolonging of the case, Apple seeks

13   its attorney fees from ALD, an entity called ███████████████████, and Ramey LLP

14   pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.

15          ALD's actions and those of its counsel were no mere lapse in judgment.  They are part of a

16   pattern of vexatious litigation.  ALD, through Ramey LLP, filed 7 cases.  Every motion to dismiss an

17   ALD complaint that reached resolution by a court—five total—resulted in dismissal of ALD's

18   complaint for lack of a plausible basis for infringement.[2]  ALD has the rare status of filing ***five***

19   implausible complaints against ***five*** different companies.   But such results are not so rare for Ramey

20   LLP's clients, who have been ordered to pay attorney fees 15 times in the past 5 years.  *See infra*,

21   Section II.A (listing cases).  Recently in this District, Judge Chhabria admonished Mr. Ramey and Ms.

---

[2]   Dkt. 49 at 15 ("The complaint fails to plausibly allege the Accused Product infringes the Asserted Patents' 'crowd risk determinant' limitation because the term 'crowd risk' cannot plausibly be construed to include the likelihood of an individual's past exposure to COVID-19."); *ALD Social LLC v. Google LLC*, No. 22-cv-972-FB, 2023 WL 3184631, *4 (W.D. Tex. Mar. 17, 2023) ("Plaintiff [ALD] cannot plausibly allege Google's Accused Products 'determine a crowd risk' or include a 'crowd risk determinant,' and dismissal is therefore appropriate."); *ALD v. Verkada, Inc.*, No. 23-cv-00049-JSC, 2023 WL 1802418, *4 (N.D. Cal. Feb. 7, 2023) ("[ALD]'s implausible construction . . . fails to state a claim for literal infringement."); *ALD v. T-Mobile US, Inc.*, No. 6-22-cv-00973-FB, Dkt. 18 at 14 (W.D. Tex. Sep. 30, 2023) ("[ALD] in this case asserts an implausible construction or alleges facts inconsistent with infringement") (attached as Ex. 1-1); *ALD v. Verizon Communications Inc.*, No. 6:22-cv-01011-FB, Dkt. 18 at 14 (W.D. Tex. Sep. 30, 2023) (attached as Ex. 1-2) (same).

1   Kalra for filing yet another frivolous case, awarded attorney fees to the defendant, and noted that "*[t]he*

2   *attorneys for EscapeX [Mr. Ramey and Ms. Kalra] are lucky that Google did not separately ask the*

3   *Court to impose sanctions on them*." *EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023

4   WL 5257691 at *1 (N.D. Cal. Aug. 16, 2023) (emphasis added).  It is apparent that Ramey LLP did

5   not find itself in a meritless case by accident.  The firm of 8 attorneys[3] has filed 707 patent cases in

6   the past 3 years[4]— *not a single one* of which has reached a determination on the merits favoring

7   Ramey LLP's clients.[5]  Parties represented by Ramey LLP routinely find themselves on the receiving

8   end of orders finding they should be punished for pursuing exceptionally weak cases.  The facts of

9   this case merit the same result.  Not only should the Court punish ALD (and ███████████

10  █), but the Court should also punish Ramey LLP by holding it liable for Apple's fees because it too

11  was responsible for the vexatious nature of this case.

12  **II.     STATEMENT OF FACTS**

13       **A.     ALD and Ramey LLP**

14       Plaintiff ALD is a patent assertion entity formed in Delaware less than two months before it

15  filed this case against Apple and other defendants and mere days before it purchased the asserted

16  patents. Ex. 4 (ALD incorporated on July 25, 2022); Ex. 5 (Patents assigned on July 29, 2022). ████

17  █████████████████████████████████████████████. Ex. 6.

18       ALD filed its original complaint on September 16, 2022, in the Waco Division of the Western

19  District of Texas, asserting infringement of two patents:  U.S. Patent No. 9,198,054 and U.S. Patent

20  No. 9,402,158.  That same month, ALD filed six other cases with nearly identical complaints.[6]  With

21  the exception of one case,[7] all defendants moved to dismiss for failure to state a claim.  Of the motions

22

---

3   *See* https://www.rameyfirm.com/about/attorneys (Susan Kalra not shown).

4   Ex. 2 (Docket Navigator results showing Ramey LLP's cases filed on or after August 1, 2020).

5   Ex. 3 (Docket Navigator results showing all substantive patent determinations in cases in which Ramey LLP represented a party on or after January 1, 2018; no determinations of "infringed" appear).

6   The cases, all originally filed in the Western District of Texas, are Nos. 6:22-cv-00959 (Alert Media) (Ex. 7-1 (docket)); 6:22-cv-00975 (Verkada) (Ex. 7-6 (docket)); 6:22-cv-00975 (T-Mobile) (Ex. 7-4 (docket)); 6:22-cv-00972 (Google) (Ex. 7-3 (docket)); 6:22-cv-00970 (AT&T) (Ex. 7-2 (docket)); and 6:22-cv-01011 (Verizon) (Ex. 7-5 (docket)).  The Verkada case was transferred to this Court as No. 3:23-cv-00049 (Ex. 7-7 (docket)).

7   Alert Media answered the complaint and asserted counterclaims against ALD. Ex. 7-1 at Dkt. 10. Instead of responding, ALD dismissed its case against Alert Media. *Id*. at Dkt. 11.

that a court resolved, ***every motion to dismiss was granted and the complaint was dismissed***.[8]

Ramey LLP, a firm of 8 attorneys, is a prolific filer of patent lawsuits.  In total, Ramey LLP has filed 11 cases against Apple.  In the past 3 years (since October 1, 2020), Ramey LLP filed 707 patent cases, an average of one suit filed every 1.5 days for that entire period.  Indeed, since September 16, 2022, the date this case was filed, Ramey LLP filed over 280 patent cases.  Ramey LLP is frequently complicit in improper litigation tactics: its clients have been sanctioned or ordered to pay fees or costs at least 15 times.  *See, e.g.*, *Verna IP Holdings, LLC v. Alert Media, Inc.*, No. 6:21-cv-00422-ADA, 2023 WL 5918320, *5 (W.D. Tex. Sept. 11, 2023) (granting fees motion in part; $48,076.50); *EscapeX*, 2023 WL 5257691, at *1-*2 (N.D. Cal. Aug. 16, 2023) (granting fees motion; $191,302); *ZT IP, LLC v. VMware*, 3:22-cv-0970, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) (granting fees motion; $92,130.35); *Traxcell Techs. v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP (lead case), 2022 WL 18507378 (E.D. Tex. Dec. 22, 2022) (granting Verizon's fees motion; $489,710); *Traxcell Techs. V. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP (lead case), Dkt. 535 (E.D. Tex. Nov. 10, 2022) (granting Sprint's fees motion; $784,529.16) (attached as Ex. 1-3); *NetSoc, LLC v. Oath Inc.*, No. 18-cv-12267 (RA), 2020 WL 7264162 (S.D.N.Y. Feb. 25, 2021) (ordering NetSoc to pay $22,106 in fees); *id.* at *4 ("The most significant factor suggesting that this case is 'exceptional' is that Plaintiff ignored the deficiency in its pleading of the '107 Patent claims for approximately three months after being informed of the error."); *WPEM, LLC v. SOTI Inc.*, No. 2:18-cv-00156, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020) (granting fees motion; $179,622) (*affirmed in WPEM, LLC v. SOTI Inc.*, 837 Fed. Appx. 773 (Fed. Cir. 2020)); *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 1:18-cv-05880, Dkt. 167 (S.D.N.Y. Nov. 12, 2019) (R&R to grant fees motion; $992,431.35) (attached as Ex. 1-5); *also* Ex. 8 (Docket Navigator results showing remedies against Ramey LLP's clients).

   **B.    Apple moved to dismiss the original complaint, told ALD about flaws regarding venue and plausibility in its original complaint, and moved to transfer this case.**

---

[8] This Court dismissed the Verkada case.  *ALD v. Verkada*, 2023 WL 1802418.  The Western District of Texas dismissed the Google, T-Mobile, and Verizon cases with prejudice.  *ALD v. Google*, 2023 WL 3184631; *ALD v. T-Mobile*, No. 6-22-cv-00973-FB, Dkt. 18 (Ex. 1-1); *ALD v. Verizon*, No. 6:22-cv-01011-FB, Dkt. 18 (Ex. 1-2.  ALD voluntarily dismissed its case against AT&T.  Ex. 7-2 (AT&T Docket, showing notice of voluntary dismissal on Dec. 15, 2022 at Dkt. 18).  ALD voluntarily dismissed its case against Apple before resolution of Apple's second motion to dismiss.  Dkts. 57, 59.

On November 23, 2022, Apple moved to dismiss the original complaint because it failed to allege facts supporting infringement of the "network monitor," "crowd risk," and "location aggregation" elements of the asserted patents.  Dkt. 21.  On February 17, 2023, Apple sent a letter to Mr. Ramey detailing fatal flaws in the complaint and ALD's pre-suit investigation:

- ALD failed to properly investigate venue because "public information reveals . . . that the accused Exposure Notification System (EN) is not even available in Texas" (Ex. 9 at 1);

- ALD's "complaint failed to allege facts supporting infringement of the 'network monitor,' 'crowd risk,' and 'location aggregation' elements" (*id.* at 2); and

- the "Asserted Patents are subject to a Terminal Disclaimer" over U.S. 8,649,806 ("disclaimer patent") but ALD "does not own the disclaimer patent," and absent ownership, "cannot enforce a terminally disclaimed patent [i.e., the Asserted Patents]" (*id.* at 3).

Apple concluded by requesting that ALD drop the case.  *Id.* at 4.

Mr. Ramey failed to respond to Apple's letter.  On March 9, 2023, Apple's counsel emailed Mr. Ramey requesting a response and a meet-and-confer regarding Apple's intent to move to transfer.  Ex. 10 (Mar. 9, 2023 email).  Eventually, Mr. Ramey agreed to a call on Friday, March 17, 2023, at 4pm CT; although Mr. Ramey chose the date and time, he failed to attend the meet-and-confer.  Ex. 11 (Mar. 15, 2023 to Mar. 23, 2023 emails) at 3-5.  After finally getting Mr. Ramey on the phone the following week, the parties discussed the venue flaws and Apple's February 17 letter.  Przybylski Decl. ¶ 2.  Mr. Ramey did not consent to Apple's motion and stated that he still did not yet have a position on Apple's letter.  Przybylski Decl. ¶ 2.

Apple then moved to transfer for improper venue and inconvenient venue.  Dkt. 27.  ALD failed to file a response to the motion to transfer.  *See* Dkt. 29 (Apple's notice of ALD's failure to oppose).  On May 31, 2023, the Western District of Texas transferred the case to this Court.  Dkt. 32.  To date, Mr. Ramey has never responded to Apple's February 17, 2023 Letter.  Przybylski Decl. ¶ 2.

**C.    The Court dismissed ALD's original complaint with leave to amend, and then ALD filed an amended complaint relying on the same facts that the Court ruled did not support a plausible infringement claim.**

On July 13, 2023, the Court heard oral argument on Apple's motion to dismiss the original complaint.  Dkt. 48.  Ms. Kalra of Ramey LLP appeared on behalf of ALD.  On July 24, 2023, the

1    Court granted Apple's motion to dismiss, finding: (1) "Plaintiff does not plausibly plead the Accused

2    Product satisfies the 'location aggregation' limitation of the '158 patent"; and (2) "the term 'crowd

3    risk' cannot plausibly be construed to include the likelihood of an individual's past exposure to

4    COVID-19." Dkt. 49 at 12, 15.  On August 14, 2023, despite the Court's clear message, ALD filed

5    an amended complaint that alleged the "crowd risk" limitation of the '054 patent was met by EN

6    determining the likelihood of an individual's past exposure to COVID-19.  Dkt. 51-1 at 27-31.  In fact,

7    as to "crowd risk," ALD's amended complaint added only four citations to documents, and they simply

8    confirmed the facts alleged in the original complaint—EN determines the risk that an individual was

9    exposed to a COVID-19 positive individual.  Dkt. 53 (motion to dismiss amended complaint) at 6-11.

10         **D.    Apple alerted ALD to the deficiencies in its amended complaint before moving to
                   dismiss that complaint.**

11

12         On August 23, 2023, Apple sent a letter to ALD's counsel, Mr. Ramey and Ms. Kalra,

13   identifying deficiencies in the FAC and reminding ALD it did not own the "disclaimer patent" and

14   thus could not assert the '054 patent.  Ex. 12 (Aug. 23, 2023 Letter).  Apple explained that as to "crowd

15   risk," "ALD's FAC directly contradicts the conclusions of the Court's July 24 Order and presents a

16   knowingly unviable infringement read," including by pointing to "exposure risk calculated from

17   records of past encounters between mobile devices and communicated retroactively to individuals."

18   *Id.* at 2-3.  ALD's counsel did not respond by August 28, 2023, Apple's deadline to respond to the

19   FAC.  Przybylski Decl. ¶ 3.  On August 28, Apple moved to dismiss the FAC.  Dkt. 53.

20         On September 13, 2023, Apple served a motion for sanctions under Rule 11 on ALD by email

21   to ALD's counsel of record, Mr. Ramey and Ms. Kalra.  Przybylski Decl. ¶ 4.  At that time, Apple

22   also served a letter on ALD by email to Mr. Ramey and Ms. Kalra.  Ex. 13 (September 13, 2023

23   Letter).  That letter stated Apple's intent to file the motion after the 21-day safe harbor period if ALD

24   did not dismiss its amended complaint with prejudice by that time, and also warned ALD that Apple

25   intended to seek attorney fees.  *Id.*  On September 28, 2023, Mr. Ramey responded by proposing a

26   stipulated dismissal.  Przybylski Decl. ¶ 5.  Apple told ALD that Apple would not waive its right to

27   seek fees.  *Id.*  ALD would not agree to a dismissal with prejudice that preserved Apple's right to seek

28   fees, and instead filed a Notice of Dismissal ***without*** prejudice on October 2, 2023.  Dkt. 57.  The next

1   morning, the Court ordered that the motion to dismiss hearing would proceed due to the fact that

2   ALD's dismissal was without prejudice.  Dkt. 58.  Within hours of that order—the day before the Rule

3   11 safe harbor expired—ALD dismissed the case *with* prejudice.  Dkt. 59.

4   **III.    LEGAL STANDARD**

5         **A.    An award of attorney fees under 35 U.S.C. § 285 is appropriate in "exceptional**

      **cases."**

6

7         A Court can award fees under 35 U.S.C. § 285 "to the prevailing party" in "exceptional" cases."

8   The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect

9   to the substantive strength of a party's litigating position (considering both the governing law and the

10  facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC*

11  *v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014).  Exceptionality is determined based on the

12  "totality of the circumstances" including "frivolousness, motivation, objective unreasonableness (both

13  in the factual and legal components of the case) and the need in particular circumstances to advance

14  considerations of compensation and deterrence."  *Id* n.6.  Fee awards under § 285 are unique to patent

15  law, and therefore Federal Circuit law governs.  *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d

16  1368, 1379 (Fed. Cir. 2009).

17        **B.    The Court may exercise its inherent authority to sanction a party or its lawyers**

      **for bad faith conduct.**

18

19       "A district court may award attorneys' fees when the interests of justice so require."  *Realtime*

20  *Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4[th] 1372, 1377 (Fed. Cir. 2022) (citation omitted).

21  "Under its 'inherent powers,' a district court may also award sanctions in the form of attorneys' fees

22  against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

23  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (affirming sanctions under inherent

24  authority against party); *also Evon v. L. Offs. Of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012)

25  (affirming sanctions under inherent authority against counsel); *Fink v. Gomez,* 239 F.3d 989, 991 (9th

26  Cir. 2001) (A court's inherent authority is one of the tools that "enable courts to sanction parties or

27  their lawyers for improper conduct.").  "Sanctions [under inherent authority] are available for a variety

28  of types of willful actions, including recklessness when combined with an additional factor such as

1  frivolousness, harassment, or an improper purpose." *Id.* at 994.  A court can award sanctions under

2  its inherent authority if it "make[s] an explicit finding . . . that counsel's conduct constituted or was

3  tantamount to bad faith." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002).

4        **C.**    **Pursuant to 28 U.S.C. § 1927, an attorney who unreasonably and vexatiously multiplies proceedings may be held liable for attorney fees.**

5

6       "Any attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously

7  may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

8  reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The law of the regional circuit

9  governs Section 1927 awards.  *See, e.g.*, *Phonometrics, Inc. v. Westin Hotel Co,* 350 F.3d 1242, 1246

10  (Fed. Cir. 2003) (applying regional circuit law).  "'Sanctions pursuant to section 1927 must be

11  supported by a finding of subjective bad faith.'"  *Blixseth v. Yellowstone Mountain Club, LLC*, 796

12  F.3d 1004, 1007 (9th Cir. 2015) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306

13  (9th Cir. 1989)).  "Bad faith is present when an attorney knowingly or ***recklessly*** raises a frivolous

14  argument . . . ." *Id*. (emphasis added); *Fink*, 239 F.3d at 993 ("recklessness suffices for § 1927")*.*

15  **IV.**   **ARGUMENT**

16        **A.**    **The Court should award Apple—the prevailing party—reasonable attorney fees under 35 U.S.C. § 285 because ALD and Ramey LLP filed and knowingly prolonged an exceptionally weak case.**

17

18         **1.**    **Apple is the prevailing party.**

19       Apple is a "prevailing party" for the purpose of § 285 because ALD voluntarily dismissed its

20  case against Apple ***with prejudice***.  *Internet Media Interactive Corp. v. Shopify Inc*., No. CV 20-416

21  (MN), 2020 WL 6196292, at *3 (D. Del. Oct. 22, 2020) ("[T]his Court concludes that Plaintiff's

22  voluntary dismissal with prejudice under Rule 41(a)(1)(A)(i) rendered Defendant a prevailing party in

23  this case.").  The import of a dismissal "with prejudice" is "Defendant can no longer be subject to the

24  particular claim of infringement asserted in Plaintiff's Complaint" and is therefore considered a

25  "prevailing party."  *Id*.; *also Keith Manufacturing Co. v. Butterfield*, 955 F.3d 936, 938 (Fed. Cir.

26  2020) (defendant could seek fees under § 285 after a Rule 41(a)(1)(A)(ii) dismissal with prejudice that

27  "was silent as to costs and attorney's fees"); *Kelly v. TD Bank USA, N.A.*, 2022 WL 4791981, *6 (D.

28  Ore. Sept. 6, 2022) ("Although Kelly had the right unilaterally to terminate his [action] against TD

1  Bank, Kelly's voluntary dismissal did not preclude TD Bank from moving for a fee award.").

2          **2.**      **This case was exceptional from its inception due to ALD and Ramey LLP**
                           **failing to conduct an adequate pre-suit investigation.**

3

4        ALD's allegations were clearly exceptional and baseless from the moment they were filed

5  given that the factual sources on which ALD chose to rely *contradicted* ALD's infringement

6  allegations.  For example, in its allegations regarding the "aggregation of *current* locations" limitation

7  of the '158 patent, ALD relied on documents that refer instead to *delay* in uploading Bluetooth beacons

8  and a further *delay* in downloading the beacons of individuals who tested positive for COVID-19, and

9  those disclosures of delay were *in the very diagrams ALD selected for its claim chart*.  ALD put the

10  diagram below in its claim chart and added the red boxes, yet apparently ignored that the function

11  *ALD accused* as the alleged aggregation of *current* locations occurs "a few days later" (yellow

12  highlighting by Apple).



18  Dkt. 1-1 at 51 (Ex. D at 3).  No reasonable construction of the claim's required aggregation of "current

19  location" could expand it to cover the accused aggregation of location from "a few days later."  A

20  reasonable attorney should recognize this incurable flaw in a Rule 11 basis to file suit.

21        Regarding the "crowd risk determinant" of both patents, the story is similar.  ALD and its

22  counsel chose to cite for alleged infringement documents that show EN determines the likelihood of

23  an *individual's* past exposure to COVID-19 from another *individual*.  Dkt. 51-1 at 27-31.  Indeed,

24  ALD selected a snippet in its claim chart in the "crowd risk determinant" element that shows this fact.

25  **13. How does the system know when I have been exposed?**

26  The public health authority sets parameters to determine if someone has been exposed. For
   example, by defining the risk parameters based on estimated time the user has been in contact

27  with someone who has been diagnosed as positive for COVID-19 and the approximate distance
   between the users. Public health authorities will set a minimum threshold for time spent

28  together.

*Id.* at 28.  The Court also recognized this fact about how EN works based on the documents attached to the pleadings when it dismissed ALD's original complaint:  "Because Alice's mobile device is periodically downloading the Bluetooth beacon keys of everyone who has tested positive for COVID-19 in her region, she receives ***a notification that she recently encountered someone*** who tested positive for COVID-19 when her mobile device finds Bob's Bluetooth identifier in the list of those associated with a positive COVID-19 diagnosis."  Dkt. 49 at 8 (citing ALD's original complaint claim charts).  ALD's failure to make a plausible case of infringement was not a close call.  Uploading beacons "days later" is not "current."  And an individual is not a crowd—in fact "individual" can be fairly characterized as the antonym of a "crowd."

The fact that the very documents cited by ALD—indeed, the specific material ALD chose to excerpt in its charts—explicitly refuted ALD's allegations of infringement demonstrates that ALD and its counsel failed to conduct a reasonable and competent inquiry into a plausible basis for infringement before filing the original complaint.  Regarding the "current location" limitation of the '158 patent, ALD's opposition to the motion to dismiss failed to address that limitation—full stop.  *See generally* Dkt. 23; Dkt. 24 at 8-9 (Apple's Reply discussing ALD's failure to respond).  Nor could ALD provide any support or defense to its assertion of the '158 patent at the July 13, 2023 hearing.  Ex. 14 (hearing tr. at 9:10-10:8) (ALD's counsel merely stating "there must be some way" in response to Court's statement "I don't see where it is alleged that the accused product aggregates current location").  The Court concluded that "the documents Plaintiff attached to the complaint ***show*** the Accused Product does ***not*** aggregate current locations of mobile devices[.]"  Dkt. 49 at 12 (emphasis added).  The failure by ALD's counsel to recognize the impossibility of ALD's allegations makes clear that ALD's counsel never undertook their obligation to determine there was "a reasonable basis for a finding of infringement of at least one claim of each patent so asserted" before filing the OC.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (affirming sanctions of $97,825.48 against plaintiff's law firm); *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 963-965 (N.D. Cal. 2015) (holding law firm jointly and severally liable for $100,000 of attorney fees as a Rule 11 sanction where claim construction positions were "so unreasonable that no reasonable litigant could believe it would succeed" rendering the claims "objectively baseless from the start").

1    Regarding "crowd risk determinant," the asserted patents focus on "predict[ing] public safety

2   risks, e.g., the unexpected impending formation of a flash mob, or a riot, etc.'"  Dkt. 49 at 13 (quoting

3   '054 patent 2:52-56 and '158 patent 2:58-60).  The Court found that ALD's allegations that EN

4   "monitor[s] every interaction between two or more people, including crowd gatherings of any kind,

5   and assesses the individual and unique risk of COVID-19 exposure of every individual in the crowd"

6   was "***contradicted*** by Plaintiff's claim charts and attached documents" and was "an ***inaccurate***

7   description of the Accused Product."  Dkt. 49 at 14.  The Court concluded what ALD and its counsel

8   would have concluded had they performed a competent inquiry: "Risk to an individual is not the same

9   as or equivalent to risk posed by a crowd."  Dkt. 49 at 15; *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d

10  1314, 1329 (Fed. Cir. 2011) ("A reasonable presuit investigation, however, also requires counsel to

11  perform an objective evaluation of the claim terms when reading those terms on the accused device.").

12   ALD's failure to perform reasonable pre-suit diligence renders this case exceptional.  *See*

13  *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) ("Nor did

14  the district court err in treating pre-suit diligence as a factor in the totality-of-the-circumstance

15  approach, as we have previously approved of this consideration in § 285 determinations."); *Thermolife*

16  *Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed. Cir. 2019) (affirming district court's finding of

17  inadequate pre-suit investigation into infringement as a basis for finding the case exceptional under

18  Section 285); *EscapeX*, 2023 WL 5257691 at *1 ("It is obvious that EscapeX [represented by Ramey

19  LLP] conducted no serious pre-suit investigation and that this case was frivolous from the start.").

20   Regrettably, this does not appear to be a one-time lapse of judgment.  Ramey LLP has found

21  itself the subject of withering criticism by numerous courts for failing to perform a competent pre-suit

22  investigation.  *See, e.g.*, *ZT*, 2023 WL 1785769 at *3 (awarding attorney's fees where Mr. Ramey

23  ***failed to conduct "a simple search on the internet" during plaintiff's pre-suit investigation*** to

24  uncover that the accused product predated the asserted patent) (emphasis added); *WPEM*, 2020 WL

25  555545, *3  ("[C]rucially, the Court finds that WPEM [represented by Mr. Ramey] conducted

26  ***absolutely no*** pre-filing investigation[.]") (emphasis in original); *Traxcell Techs., LLC v. Huawei*

27  *Techs. USA Inc.*, No. 2:17-cv-42-RWS-RSP (lead case), 2017 WL 6559256 at *4-*5 (E.D. Tex. Dec.

28  21, 2017) (ordering sanctions under FRCP 37 for insufficient infringement contentions where the

1  *infringement allegations made "no clear linkage" and "identif[ied] documents to support*

2  *infringement* that have no relevance to whether or not a claim element is met") (emphasis added).

3  Instead, it appears to be Ramey LLP's business model to file frivolous lawsuits without engaging in

4  the merits of a case.  *See* Sections IV(B-D), *infra*.  Such a "pattern of engaging in frivolous patent

5  lawsuits" can—and in this case should—"merit[] an exceptional case determination."  *Hawk Tech.*

6  *Sys., LLC v. Castle Retail, LLC*, No. 2:20-cv-2766, 2023 WL 5826978, *4-5 (W.D. Tenn. Sept. 8,

7  2023) (awarding attorney fees due to pattern of frivolous activity and filing of an exceptionally weak

8  case).  In short, ALD's assertion of each asserted patent in its original complaint, as well as ALD's

9  failure to investigate venue, was frivolous and makes this case stand out from others.

10         **3.**        **Alternatively, this case became exceptional following the Court's July**
                   **2023 Order dismissing the original complaint for implausibility.**

11

12        After suffering the rare fate, for a patent plaintiff, of having its infringement claims dismissed

13  for implausibility, and despite the Court's clear articulation that risk to an individual of COVID-19

14  exposure from another individual cannot plausibly be the claimed "crowd risk," or equivalent, ALD

15  persisted with its flawed allegations.  Rather than voluntarily dismissing the case, ALD filed its first

16  amended complaint (FAC) alleging that the "crowd risk determinant" limitation was met by the ***same***

17  ***functionality*** that the Court found insufficient.  ALD's decision was inexcusable.  *See Traxcell Techs.,*

18  *LLC v. AT&T Corp.*, 2022 WL 949951, *4-6 (E.D. Tex. 2022) (awarding fees "based on Traxcell's

19  pursuit of objectively baseless infringement theories . . . that disregarded the earlier rulings").

20        ALD's reliance in its FAC on the same feature of EN that the Court found insufficient to

21  support a plausible allegation in the OC is proof that ALD and its counsel knowingly pursued a

22  frivolous and vexatious litigation by filing the FAC.  The Court informed ALD that:

23            Risk to an individual is not the same as or equivalent to risk posed by a
          crowd. The term "crowd risk" does not encompass the likelihood of an

24            individual's past exposure to COVID-19.

25  Dkt. 49 at 15.  But the FAC simply doubled down, ignored the Court's findings, and once again

26  accused EN's ability to determine the likelihood of an ***individual's*** past exposure to COVID-19 of

27  meeting the "crowd risk determinant" limitation.

28

---

### 3. How can technology augment conventional contact tracing?

Technology can play an important role in those efforts. Mobile devices can be used in an automated and scalable way to help determine who has been exposed to a person who later reports a positive diagnosis of COVID-19. For example, they can be used to send a rapid notification to the exposed person with instructions on next steps. These notifications may be

Dkt. 51-1 '054 chart at 13 ("crowd risk determinant" row; highlighting by Apple).  The FAC's claim chart likewise cited the same EN Exposure Configuration website as the OC's claim chart:

> The ExposureNotification framework defines an Exposure Risk Value (ERV) to allow Health Authorities to define when to alert a user that they may have been exposed to someone diagn with COVID-19. The app uses the ERV to calculate the user's Meaningful Exposure Minutes

*See*   Ex.   15   (https://developer.apple.com/documentation/exposurenotification/enexposure configuration) (cited by ALD at Dkt. 51-1 '054 chart at 12) (highlighting by Apple).  Once again, this makes clear that EN works exactly as the Court found it works when dismissing the OC:  it assess whether an individual was exposed to a COVID-19 positive individual.  Dkt. 49 at 14-15.  In fact, ALD continued to cite the same document excerpts that appeared in its original complaint.

### 13. How does the system know when I have been exposed?

The public health authority sets parameters to determine if someone has been exposed. For example, by defining the risk parameters based on estimated time the user has been in contact

with someone who has been diagnosed as positive for COVID-19 and the approximate distance between the users. Public health authorities will set a minimum threshold for time spent together.

*Compare* Dkt. 51-1 at 28 (FAC '054 Chart at 10) with Dkt. 1-1 at 42-44 (Original Complaint '054 chart at 7-9).  ALD's disregard for the Court's order demonstrates this case is exceptional under § 285.

In short, ALD's assertion of the '054 patent in its FAC was frivolous and a continuation of the pattern of frivolous activity that began with the filing of the original complaint.  Accordingly, ALD and ████████████████████████[9]—should be ordered to pay Apple's fees.

**B.     The court should exercise its inherent authority to award Apple reasonable attorney fees because ALD, ████, and Ramey LLP pursued the case in bad faith.**

For at least the reasons identified above regarding the bad-faith and exceptional nature of this

---

[9] For the reasons why ████ should be joined and held liable, *see infra*, Section IV.D.

1   case, the Court should award Apple reasonable attorney fees under its inherent powers.  In addition to

2   holding ALD liable, the Court should exercise its inherent powers to hold the law firm Ramey LLP,

3   Mr. Ramey, and Ms. Kalra liable for Apple's fees due to their bad faith and vexatious litigation tactics

4   demonstrated in both this case and as part of a pattern of their misuse of the judicial system.  *Roadway*

5   *Exp., Inc. v. Piper*, 447 U.S. 752, 765-766 (1980) ("federal courts have inherent power to assess

6   attorney's fees against counsel," including "when the losing party has acted in bad faith, vexatiously,

7   wantonly, or for oppressive reasons"); *Craig v. PopMatters Media, Inc.*, No. 18-CV-1713-SMY, 2022

8   WL 3026856, at *2 (S.D. Ill. Aug. 1, 2022) (awarding fees against counsel under inherent authority

9   where he "engaged in a troubling pattern of filing similar lawsuits"); *Gibson v. Credit Suisse Grp. Sec.*

10  *(USA) LLC*, 733 F. App'x 342, 345 (9th Cir. 2018) (*non-precedential*) (affirming fees against counsel

11  under inherent authority for bad faith conduct).

12          Ramey LLP repeatedly ignored Apple's letters identifying flaws in ALD's allegations, failed

13  to respond to Apple's motion to transfer, and failed to respond to Apple's motion to dismiss as to the

14  aggregation of "current" locations.  *See* Section II.B, *supra*.  This case is but one example of Mr.

15  Ramey filing a frivolous case and substantially failing to engage on the merits of the case.  For

16  example, Mr. Ramey has been called out by another court for ignoring letters and requests to confer:

17              ZT [represented by Mr. Ramey] admits in its response that it asked for
18              a follow-up meeting one week later, but it failed to mention (and failed
                to deny) that it did not show up to that very meeting.  The day after ZT
19              failed to show up to the meeting, [Defendant sent correspondence.]  ZT
                did not respond to this, nor did it respond to another letter that
20              [Defendant] wrote it five days later[.]

21  *See ZT*, 2023 WL 1785769, *3.  Similarly, failing to respond to motions is a repeat practice by Mr.

22  Ramey.[10]  *See id.* at *4 ("On July 8, [Defendant] filed its motion to dismiss, and ZT [represented by

23  Mr. Ramey] did not respond."); *Fare Techs., LLC v. Uber Techs., Inc.*, No. W-22-CV-00317-ADA,

24  2023 WL 2258334, *2 (W.D. Tex. Feb. 27, 2023) ("Plaintiff [represented by Mr. Ramey] wholly failed

25  to respond to this portion of Defendant's Motion."); *Traxcell Techs., LLC v. Google LLC*, No. 6:21-

26

27  _____

28  [10]  Even in the past week, Mr. Ramey continued his practice of failing to respond to motions in this
    case.  Despite telling Apple that ALD would oppose Apple's motion for a two-week extension to file
    its motion for fees (Ex. 16-1 at 1)—forcing Apple to file the motion as opposed (Dkt. 60)—ALD's
    deadline to oppose the motion passed on October 16, 2023 without any filing from ALD.

1   CV-1312-ADA, 2022 WL 3593054, *1 (W.D. Tex. Aug. 22, 2022) ("In this case, Plaintiff

2   [represented by Mr. Ramey] neither filed a response nor filed a notice of intent to take venue discovery

3   within 14 days after Google filed its motion."); *id.* at *2 ("Most troublesome here is that the same

4   counsel [Mr. Ramey] representing this same plaintiff has already been chastised by this Court for his

5   repeated failure to file in a timely manner.").

6          Failures to respond to motions may show bad faith attorney conduct warranting sanctions under

7   the court's inherent power. *Pascual v. Wells Fargo Bank, N.A.*, No. 4:13-cv-02005, 2014 WL 582264,

8   *7-8 (N.D. Cal. Feb. 13, 2014) (awarding sanctions "under the Court's inherent authority" where

9   counsel's "representation of his client in this matter has been reckless," where counsel "failed to timely

10  file an opposition"). ALD's and its counsel's actions show they disregarded the burdens their frivolous

11  case had on the Court and Apple. "Baseless filing puts the machinery of justice in motion, burdening

12  courts and individuals alike with needless expense and delay." *Cooter & Gell v. Hartmarx Corp.*, 496

13  U.S. 384, 398 (1990).

14         Notably, Ramey LLP has built a business around filing frivolous patent lawsuits on behalf of

15  judgment-proof clients. Since October 2020, Ramey LLP has filed 707 patent cases. Ex. 2. The

16  filings include 11 cases against Apple in the last 32 months alone. *See id*. Notably, Ramey LLP has

17  not obtained ***a single finding of infringement*** in the last 5 years. Ex. 3. However, courts have levied

18  costs and attorney fees awards against clients of Ramey LLP over 15 times in those same 5 years,

19  totaling nearly $3M. *See* Ex. 8; *also* list of cases in Section II.A, *supra*. Sanctioning Ramey LLP,

20  Mr. Ramey, and Ms. Kalra is necessary to deter them from continuing this practice. *Roadway Exp.,*

21  *Inc. v. Piper*, 447 U.S. at 766 (holding that courts may assess fees "against counsel who willfully abuse

22  judicial processes"); *Craig*, 2022 WL 3026856, at *2 (awarding fees against counsel under inherent

23  authority where he had "engaged in a troubling pattern of filing similar lawsuits"); *ZT*, 2023 WL

24  1785769 at *3 ("ZT looks worse because of its counsel's previous failure in a similar situation . . . ZT

25  finds itself in a similar position today with ***Ramey*** again serving as counsel. The standard for

26  exceptional case does not change based on counsel's previous failures; however, a previous warning

27  about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to

28  advance considerations of compensation and deterrence.").

1   This practice must stop.  Ramey LLP should not be permitted to file frivolous cases on behalf

2   of companies that are judgment-proof so Mr. Ramey, his clients, and their backers can avoid facing

3   financial consequences.  The Court should exercise its inherent authority to sanction ALD, ███, and

4   Ramey LLP to award Apple its fees.  *Eon-Net*, 653 F.3d at 1326-27 (fee award supported by party's

5   "history of filing nearly identical patent infringement complaints against a plethora of diverse

6   defendants" and "act[ions] in bad faith by exploiting the high cost to defend complex litigation to

7   extract a nuisance value settlement"); *SAP Am., Inc. v. InvestPic, LLC*, No. 3:16-CV-02689-K, 2021

8   WL 1102085, at *8 (N.D. Tex. Mar. 23, 2021) (joining plaintiff's owners and law firm in fees award

9   as "responsible for making . . .[the] case exceptional"); *Craig*, 2022 WL 3026856, at *2 (awarding

10  fees against counsel under inherent authority where he had "engaged in a troubling pattern of filing

11  similar lawsuits"); *Fid. Land Tr. Co., LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 6:12-CV-1367-

12  ORL-37, 2012 WL 6720994, at *5 (M.D. Fla. Dec. 4, 2012) (awarding sanctions under inherent

13  authority where "[t]here was no plausible basis in law for the filing of [the] action"); *Pascual*, 2014

14  WL 582264, at *8-*9 ("Despite being reprimanded by other judges in this district for his frivolous and

15  unprofessional conduct, Mr. Jones continues to file with impunity," resulting in "numerous nearly

16  identical actions" many "dismissed with prejudice," the court finding such actions "tantamount to bad

17  faith" and "sanctionable under the Court's inherent authority").

18       **C.      William Ramey and Susan Kalra of Ramey LLP should be sanctioned for**
            **vexatiously multiplying the proceedings under 28 U.S.C. § 1927.**
19

20       Ramey LLP recklessly and vexatiously multiplied the proceedings by advancing substantially

21  the same allegations in its FAC that were dismissed by the Court's July Order, wasting the Court's

22  and Apple's resources with a second motion to dismiss and a Rule 11 sanctions motion Apple served

23  but did not file.  The Court found "the term 'crowd risk' cannot plausibly be construed to include the

24  likelihood of an individual's past exposure to COVID-19" when it dismissed the original complaint.

25  Dkt. 49 at 1.  But Ramey LLP filed a FAC that continued to assert that "crowd risk" was met by an

26  individual's likelihood of COVID-19 exposure—the ***same theory*** rejected by the Court.  *See* Dkt. 53

27  at 2.  In response to the FAC, before moving to dismiss, Apple sent another letter to Mr. Ramey and

28  Ms. Kalra notifying them of the shortcomings in ALD's FAC and requesting that ALD dismiss the

1    case.  Przybylski Decl. ¶ 3; Ex. 13.  Mr. Ramey and Ms. Kalra never responded to the letter, and they

2    did not contact Apple until after Apple had fully briefed its motion to dismiss the FAC and served a

3    Rule 11 sanctions motion—at significant expense.  Przybylski Decl. ¶¶ 3-4.  Even then, they did

4    nothing for nearly three weeks.  Two days before the Rule 11 safe harbor expired, ALD dismissed its

5    claims, without prejudice; then when the Court quickly ordered the parties to attend the scheduled

6    MTD hearing nevertheless, ALD finally dismissed all its claims with prejudice with only one day left

7    in the safe harbor period. Przybylski Decl. ¶¶ 5-6.

8          "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument."

9    *New Alaska Dev. Corp.*, 869 F.2d at 1306.  Ramey LLP's reckless continued assertion of a rejected

10   theory warrants sanctions, and Mr. Ramey and Ms. Kalra's failure to dismiss the FAC until after Apple

11   had expended considerable effort opposing it demonstrates bad faith.  *See R. Prasad Indus. V. Douglas*,

12   673 F. App'x 676, 677 (9th Cir. 2016) (*non-precedential*) (granting § 1927 sanctions based on refiling

13   claims because such action "unreasonably multiplied proceedings"); *Edwards v. Vemma Nutrition*,

14   835 F. App'x 174, 176 (9th Cir. 2020) (*non-precedential*) ("Here, the district court found that

15   Edward's . . . SAC was *frivolous* . . . insofar as such defendants were all dismissed from the SAC *for

16   the exact same reasons they were dismissed from the FAC*" and the "SAC had violated the clear,

17   emphatic, and plain instructions of its order granting leave to amend") (cleaned up) (emphasis in

18   original); *Pascual*, 2014 WL 582264, *7-*9 (N.D. Cal. Feb. 13, 2014) (finding "Plaintiff's counsel

19   clearly multiplied the proceedings" where "[t]he amended complaint did not contain additional facts"

20   to overcome the failings of the original complaint, and granting § 1927 sanctions ordering the attorney

21   to personally pay 75% of the attorney fee award); *Lippert Components Manufacturing, Inc. v.

22   Mor/Ryde Int'l Inc.*, No. 3:14-cv-1999, 2016 WL 9954302, *4 (N.D. Ind. May 20, 2016) (granting

23   sanctions under § 1927 based on "Counsel's decision to then reassert [the] same theory" the court

24   previously dismissed, finding doing so "was objectively unreasonable").

25         **D.**   ███████████████████  **ALD, should be joined and held liable.**

26         Pursuant to FRCP 19, a party must be joined if "in that person's absence, the court cannot

27   accord complete relief among existing parties."  "If the absent party is necessary, the court then

28   determines whether joinder is feasible."  *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF,

1   2018 WL 3845998, *8 (N.D. Cal. Feb. 24, 2020) (internal quotation marks omitted). ███████

2   is a necessary party because ALD likely cannot pay any fees awarded to Apple and thus in ███

3   absence, the Court cannot accord complete relief.  Because ████████████████████████

4   ███████████████████████████████████████, it is feasible to join ███.

5          On June 2, 2023, ████████████████████████████████████████████

6   ████████████████████████████████.[11]  Ex. 6.  Further, on October

7   10, 2023, in response to communications between Apple's outside counsel and Mr. Ramey regarding

8   an extension for Apple's motion for fees, Mr. Ramey cc'ed █████████████████████████

9   ██████████████████████████, and copied nobody from ALD.  Ex. 16-1.  Based on its

10  website, ████ appears to be in the business of litigation funding or backing.  Ex. 17 (listing "IP

11  Litigation Finance" under heading "How We Work").

12         Given that ALD was formed immediately before the acquisition of the Patents-in-Suit and that

13  a litigation funding entity ████████ ALD, it is likely ALD has no other assets.[12]  Indeed, representing

14  judgement-proof entities appears to be Ramey LLP's practice.  Earlier this year, Mr. Ramey

15  represented that another client would be rendered insolvent if forced to post a bond for a fee award

16  pending appeal.  *Traxcell Techs.*, 2:17-cv-00718-RWS-RSP, Dkt. 548 at 3, 9 (E.D. Tex. Jan. 19, 2023)

17  (attached as Ex. 1-8).  That client recently filed a Notice of Suggestion of Bankruptcy.  *Id.* Dkt. 573

18  (Sept. 26, 2023) (attached as Ex. 1-9).  In another case—*ZT*, also awarding fees—the defendant was

19  recently forced to file a motion to hold Ramey LLP and the litigation funder jointly liable for the fee

20  award after its post-judgement discovery determined that "[plaintiff] was formed as a judgment-proof

21  shell company" and defendant was unable to recover its fee award.  *ZT IP, LLC v. VMWare, Inc.*, 3:22-

22  cv-00970, Dkt. 46 (N.D. Tex. Aug. 11, 2023) (attached as Ex. 18).

23         The Court can join a party that "had control over th[e] litigation" particularly where the

24

25  [11]  Given that ████████████████████, it appears ALD and Ramey LLP filed a false Fed. R.
    Civ. P. 7.1 Certificate, which stated that the only "persons, associations of persons, firms, partnerships,

26  corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities
    that are financially interested in the outcome of the case" were ALD and Ramey LLP.  Dkt. 4.

27  [12]  To the extent the Court requires Apple to prove ALD has insufficient funds to pay a fee award,

28  Apple requests leave to conduct discovery, including discovery pursuant to Fed. R. Civ. P. 69 on a
    judgment debtor to demonstrate what funds are available among Ramey LLP, ALD, and ████.

1   plaintiff "lacks financial resources and [defendant] would be unable to recover a meaningful attorneys'

2   fee award" without joinder. *Phigenix*, 2018 WL 3845998 at \*12. In such circumstances, courts find

3   it appropriate to join such entities so that they are held liable for fee awards. *See, e.g.*, *SAP*, 2021 WL

4   1102085, at \*5-\*8 (finding plaintiff was a "sham or shell entity that is designed and intended to avoid

5   liability" and joining entities with an ownership interest in plaintiff for purposes of a fee award); *Iris*

6   *Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 852 (E.D. Tex. 2017) (holding party and controlling

7   entity jointly liable for attorney fee award). The Court should do so here.

8           ██████████ is also feasible. "[B]oth Ninth Circuit and Federal Circuit apply the same three-

9   part test when applying the Supreme Court's minimum contacts standard" for determining feasibility.

10  *Phigenix*, 2018 WL 3845998 at \*13. This includes "1) whether the [party to be joined] purposefully

11  directed its activities at residents of the forum; 2) whether the claim arises out of or relates to the [party

12  to be joined]'s activities in the forum; [and] 3) whether the exercise of jurisdiction is reasonable and

13  fair." *Id.* First, ████ purposefully directed its activities at Apple, a resident of the Northern District

14  of California, through ██████████████████████. *See id.* at \*14 (finding first factor met where

15  joined party "partially funded and pressed forward with this lawsuit, which was transferred to this

16  District"). Second, the claim arises out of ████ activities (through ALD) in this lawsuit in this forum.

17  *Id.* at \*15 ("Based on the same evidence discussed for the first factor, the Court finds that . . . [joined

18  party's] conduct in this forum and litigation activities in this Court" render the activities related to the

19  request for fees). Third, in the absence of joinder, Apple likely cannot collect any award of fees

20  because ALD likely has insufficient funds to pay.[13]

21          **E.      The Court should award Apple $742,774.88 in fees.**

22          Apple requests that the Court award $742,774.88 as a reasonable fee. This amount is 23% less

23  than what Apple was billed in this case. Apple offers the following data to show that the amount it

24  requests is reasonable: (1) an explanation of the flat fee billing practices of its counsel, Desmarais

25  LLP, based on a profit margin competitive with its peer firms; (2) cases of comparable circumstances;

26

27  _____

[13] In the alternative, ████ should be joined pursuant to FRCP 20(a)(2). For the reasons stated above,
28  Apple seeks its fees "jointly, severally, or in the alternative with respect to" the same exceptional
    conduct by ████ arising from ██████ of ALD, and the same "question[s] of law or fact" related to
    Apple's request for fees are "common" to ALD and ████. *See* Fed. R. Civ. P. 20(a)(2).

1   and (3) data from the AIPLA Report of the Economic Survey.  Before explaining that data, Apple

2   addresses the fact that its billing arrangement in this case—flat fee billing without contemporaneous

3   work descriptions rather than hourly billing with time entries and contemporaneous work

4   descriptions—precludes a lodestar analysis, and why that is no impediment to awarding fees.

5             **1.**     **35 U.S.C. § 285 permits courts to award *reasonable* attorney fees—it does not limit the method of assessing fee requests to the lodestar.**

6

7         "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

8   35 U.S.C. § 285.  Section 285 does not require an attorney to bill by the hour for a party to recover

9   fees.  Although the law presumes that the "lodestar represents the 'reasonable' fee," *City of Burlington*

10  *v. Dague*, 505 U.S. 557, 562 (1992), a court may consider fee arrangements other than invoicing

11  billable hours.  *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167-68 (N.D. Cal. Mar.

12  11, 2015).  As Judge Alsup has stated, "the lodestar's place as the *preferred* method does not make it

13  the *only* method.  Even the Supreme Court acknowledges this."  *Straight Path IP Group, Inc. v. Cisco*

14  *Systems*, No. 16-cv-03463-WHA, 2020 WL 2539002, *5 (N.D. Cal. May 19, 2020) (awarding $1.9M

15  in fees based on a flat-fee arrangement).

16         In fact, long before the billable hour became the typical fee arrangement and the lodestar

17  became the accepted manner to evaluate fee arrangements, courts in patent cases awarded fees using

18  various criteria to evaluate whether a fee request was reasonable.  Section 285 was enacted through

19  Public Law 66-593 on July 19, 1952, incorporating a rewording of what was formerly 35 U.S.C. §

20  70.[14]  At that time, most law firms billed based upon minimum fee schedules or through the use of

21  retainers and contingency fees.  (*See* Ex. I-1 (F. Strong, "History & Origin of the Billable Hour,"

22  Business of Law Blog (June 22, 2015)).)  Courts in that era looked to experience of counsel, nature

23  and complexity of the case, and risk to the client, among other things.  *See, e.g.*, *Talon, Inc. v. Union*

24  *Slide Fastener, Inc.*, 266 F.2d 731, 738-741 (9th Cir. 1959).

25         The billable hour model did not become the standard fee structure in the United States until

26  the 1970s.  (Ex. I-1 ("History and Origin of the Billable Hour").)  A large shift to the billable hour

---

[14] 35 U.S.C. § 70 stated in relevant part:  "The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case."  *See Pacific Contact Labs., Inc. v. Solex Labs., Inc.*, 209 F.2d 529, 533 n.15 (9th Cir. 1953).

1   model occurred after the Supreme Court outlawed minimum fee schedules set by state bar associations

2   in 1975.  (*Id.* (citing *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975)).)  As a result, the billable

3   hour model became the typical fee structure by the late 1970s.  (Ex. I-2 (R. Muir, "A Short History of

4   the Billable Hour and the Consequences of Its Tyranny," LAW PEOPLE (June 18, 2007)).)

5        As a result of the bar's adoption of the billable hour model, courts adapted their approach to

6   evaluating attorneys' fees requests.  In 1973, the Third Circuit created the lodestar to evaluate a fees

7   request in a class action equity funds case.  *Lindy Bros. Builders Inc. v. Am. Radiator & Standard*

8   *Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973).  The lodestar eventually became the prevailing

9   approach for requesting hourly fees and evaluating such requests.  *See Perdue v. Kenny A. ex rel.*

10   *Winn*, 559 U.S. 542, 556 (2010) (noting the lodestar was adopted because of the prevailing billing

11   practices).  The first use of the "lodestar" in a patent case did not occur until 1978.  *Paeco, Inc. v.*

12   *Applied Moldings, Inc.*, No. 71-1100, 1978 WL 21466, at *1-2 (E.D. Pa. Oct. 16, 1978).

13        Indeed, as the Supreme Court recognized in 2010, "the lodestar was adopted in part because it

14   provides a rough approximation of general billing practices." *Perdue*, 559 U.S. at 556.  The lodestar

15   was never meant to be the sole test for evaluating whether a fee request is reasonable.  *See id.* ("[I]f

16   hourly billing becomes unusual, an alternative to the lodestar method may have to be found.").  As

17   Judge Alsup explained, § 285 "***mandates no specific calculation method*** and does not foreclose

18   reimbursement of an alternate billing scheme."  *Straight Path*, 2020 WL 2539002, at *4 (emphasis

19   added).  In sum, the law does not require Apple or the Court to perform a lodestar analysis for a fee

20   request under § 285.

21        **2.      Apple's counsel's way of computing flat fees demonstrates that Apple's
                    requested fee of $742,774.88 is reasonable.**

22

23        Desmarais LLP, Apple's counsel, does not bill by the hour nor record time entries, and never

24   has.  Magic Decl. ¶¶ 2-9, 14-19.  In this case, Desmarais LLP billed Apple



25   ██████████████████████████████████████████████████. *Id.* ¶¶ 10-11.

26   ████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████. *Id.*  That arrangement resulted

28   in Desmarais LLP billing $965,000 for its work from the start of the case through September 2023;

1  and $180,000 of that was for work performed after, and in response to,[15] ALD's amended complaint.

2  *Id.* ¶ 14-19.  However, in most of its cases— ███████████████████████ —Desmarais

3  LLP bases its flat fee per month on a budget agreed to for that specific case based on Desmarais LLP's

4  Pricing Tool.  *Id.* at ¶¶ 26-31.  That tool ████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████

6  ████████████.  *Id.*; Ex. H.

7       Desmarais LLP has used the Pricing Tool to compute the appropriate fees for new cases since

8  well before the ALD case began.  Magic Decl. ¶¶ 26-31.  Based on the Pricing Tool, Desmarais LLP

9  would have charged $752,774.88 for the level of resources that worked on this case from inception

10 through September 2023 ██████████████████████████████████████████████.  *Id.* ¶¶

11 34-37; Ex. H.  For the time period following ALD's FAC (August-September 2023), Desmarais LLP

12 would have charged $180,948.59 based on the Pricing Tool.  Because this is higher than the amount

13 actually billed to Apple for that timeframe ($180,000), Apple only seeks $170,000[16]—based on the

14 $180,000 in fees it was billed minus $10,000 as a conservative estimate of the small number of hours

15 the team spent on work related to IPRs—as a § 1927 sanction against Ramey LLP.

16      The data in Exhibit H therefore demonstrates that Apple's requested fee of $742,774.88 is

17 reasonable because it reflects the amount that its counsel would have had to charge in order to achieve

18 a profit margin in line with its competitors, minus the team's time spent on IPRs.

19                    **3.    Comparable cases demonstrate that Apple's requested fee of $742,774.88
                              is reasonable.**

20

21      Courts have awarded fees ranging from $191,000 to $887,000 in reasonably similar

22 circumstances.  For example, the Southern District of California awarded "$877,276.81 in reasonable

23 attorneys' fees recoverable from Plaintiff pursuant to 35 U.S.C. § 285" for an exceptional case on the

24 basis of an inadequate pre-suit investigation.  *Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*, No. 14-

25 cv-1688 DMS (KSC), Dkt. 164 at *5 (S.D. Cal. Aug. 12, 2016) (determining reasonable fee amount)

26

---

27 [15]  Aside from approximately 7 hours total across the team for reviewing drafts of IPR petitions in
      August 2023.  Magic Decl. ¶ 21; Przybylski Decl. ¶ 7; Zaidi Decl. ¶ 2.

28 [16] Apple intends to slightly reduce this number after it pays the September 2023 invoice so that it
      reflects the actual amount paid for August and September, minus $10,000.  Magic Decl. ¶¶ 17-19.

1  (attached as Exhibit J); *Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*, 14-cv-1688 DMS (KSC), 2015

2  WL 11570939, *7-8, 8 n.7 (S.D. Cal. Dec. 11, 2015) (order granting motion for attorney fees under §

3  285 and § 1927).  The case lasted approximately one year and the plaintiff dismissed its case shortly

4  after filing a first amended complaint, while the defendants' motion to compel discovery regarding

5  plaintiff's pre-suit investigation was pending.  Ex. K (*Digital Empire* docket).  In 2020, another court

6  in the Ninth Circuit awarded fees of $409,402.50 for a case that lasted less than a year from initial

7  complaint to notice of voluntary dismissal.  *See Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No.

8  19-cv-6359, 2020 WL 7889048, *10 (C.D. Cal. Nov. 23, 2020).

9      The District of Colorado awarded $407,047 in fees in a case that lasted little more than one

10  year from original complaint to the plaintiff's unopposed motion to dismiss its own case with

11  prejudice.  *See Brilliant Optical Solutions, LLC v. Comcast Corporation*, 2015 WL 1476691, at *5 (D.

12  Colo. May 27, 2015).  The court found the claims of patent infringement "objectively unreasonable

13  when this case was filed" due to a previous license between the parties.  *Id.* at *1.

14      In 2018, the District of Utah awarded $361,841.93 in fees under Rule 11 and § 1927.  *See Sub

15  Zero Franchising, Inc. v. Frank Nye Consulting LLC, d/b/a The Arctic Scoop et al*, No. 2:15-cv-00821,

16  Dkt. 83 at 8 (D. Utah April 27, 2018) (attached as Exhibit J-2).  The court found that the claims for

17  patent infringement were made "without evidentiary support" and "were not based on a reasonable

18  pre-suit investigation into the evidence or into the law." *Id.* at 2-3.

19      In 2020, the Southern District of Florida awarded fees of $325,000 in a case decided by a

20  judgment on the pleadings of invalidity under 35 U.S.C. § 101.  *See Electronic Comm'cn

21  Technologies, LLC v. ShoppersChoice.com, LLC*, No. 9:16-cv-81677, Dkt. 133 at 1-2 (S.D. Fl. Nov.

22  23, 2020) (setting fee award) (attached as Exhibit J-3).  The court found that the plaintiff "acted with

23  the goal of 'exploiting the high cost to defend complex litigation' to extract 'nuisance value

24  settlement[s].'" *Electronic Comm'cn Technologies, LLC v. ShoppersChoice.com, LLC*, No. 9:16-cv-

25  81677, Dkt. 131 at 12 (S.D. Fl. Oct. 30, 2020) (finding case exceptional) (attached as Exhibit J-4).

26      In 2017, the Eastern District of Texas awarded fees of $288,911.99 after the plaintiff voluntary

27  dismissed its case in response to being served a motion for sanctions under Rule 11 and after the

28  defendant had filed a motion for a judgement of invalidity on the pleadings. *See Rothschild Connected*

1  *Devices Innovations, LLC v. Guardian Protection Services, Inc.*, No. 2:15-cv-01431, Dkt. 104 at 3

2  (E.D. Tex. Nov. 8, 2017) (awarding fees under § 285) (attached as Exhibit J-5).

3       Recently, a court in this District awarded $191,302.18 in fees against Ramey LLP client

4  EscapeX.  The court found the case exceptional from the time of the original complaint because the

5  complaint was frivolous.  *EscapeX*, 2023 WL 5257691, at *1-*2.

6       The above decisions to award fees from approximately $191,000 to $887,000 in cases that did

7  not entail significant work beyond the pleading stage, or lasted—like here—not much more than a

8  year, show that Apple's requested fee amount of $742,774.88 is within the range of what courts have

9  found reasonable in similar circumstances, particularly given Apple's extra work here of moving to

10  transfer due to ALD's inadequate pre-suit investigation on venue.  *See also* Magic Decl. ¶¶ 43-54.

11         **4.**    **The AIPLA Report of the Economic Survey demonstrates that Apple's requested fee of $742,774.88 is reasonable.**

12

13       "In intellectual property cases, federal courts routinely rely on the American Intellectual

14  Property Law Association ('AIPLA') economic survey results published every other year" to evaluate

15  whether fees are reasonable.  *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*, No. 08-cv-7587,

16  2009 WL 9137315, *3 (C.D. Cal. Dec. 14, 2009); *Kilopass*, 82 F. Supp. 3d at 1171, 1173 n.14 (relying

17  on AIPLA survey in awarding fees).

18       ALD asserted two patents against Apple based on the Exposure Notification system, which is

19  a software-based service for warning a person that they were exposed to a person who reported having

20  COVID-19.  The allegations implicated Bluetooth technology and an application programming

21  interface.  ALD's allegations also implicated use of EN on Apple iPhones.  Apple does not know what

22  amount of damages ALD would have sought.  But Apple has been repeatedly faced with non-

23  meritorious cases seeking damages in the tens of millions and even hundreds of millions.  *See Wisc.*

24  *Alumni Res. Found. v. Apple Inc.*, 3:14-cv-00062, Dkt. 657 (W.D. Wisc. Oct. 26, 2015) (verdict of

25  $234,277,669) verdict vacated in *Wisc. Alumni Res. Found. v. Apple Inc.*, 905 F.3d 1341, 1350 (Fed.

26  Cir. 2018) (holding "there is insufficient evidence to support the jury's finding that Apple's products

27  literally satisfy the 'particular' limitation" and setting aside the jury's infringement finding);

28  *Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447, Dkt. 503 (E.D. Tex. Feb. 24, 2015) (verdict of

1  $532,900,000) verdict reversed in *Smartflash LLC v. Apple Inc.*, 680 Fed. Appx. 977, 978 (Fed. Cir.

2  2017) (*non-precedential*) (reversing verdict and denial of judgment as a matter of law after finding the

3  "asserted claims recite patent-ineligible subject matter").   As such, Apple's counsel reasonably

4  assumed in working on this case that ALD might seek at least $10M in damages.  Magic Decl. ¶ 38.

5          The AIPLA Survey collects data related to the cost of litigation, including based on (1) the

6  value of the litigation, and (2) the stage of the litigation, considering factors such as the location of the

7  case.  The AIPLA Survey polled respondents "to estimate [total litigation costs] based on a single IP

8  asset (i.e., one patent at issue[)]."  Ex. D at Survey Page 11 (heading "Litigation and Related Matters,"

9  question 45).  The following data is reported ***per patent*** for the two jurisdictions relevant to this case,

10 Texas and San Francisco, for cases where damages sought fall in the $10-25M range:

| AIPLA Category | Mean | Third Quartile |
|---|---|---|
| Litigation-Patent Infringement, All Varieties $10-$25M Initial Case Management by Location [San Francisco] (Ex. D at I-146) | $514,000 | $876,000 |
| Litigation-Patent Infringement, All Varieties $10-$25M Initial Case Management by Location [Texas] (Ex. D at I-146) | $170,000 | $275,000 |
| Litigation-Patent Infringement, All Varieties $10-$25M Inclusive of discovery, motions, and claim construction by Location [San Francisco] (Ex. D at I-147) | $2,000,000 | [unavailable] |
| Litigation-Patent Infringement, All Varieties $10-$25M Inclusive of discovery, motions, and claim construction by Location [Texas] (Ex. D at I-147) | $930,000 | $1,500,000 |

Apple's requested fee of $742,774.88 falls well within the range of cost of litigation reported by the

AIPLA for cases of comparable potential damages asks.

**V.    CONCLUSION**

        Apple requests that the Court find this case exceptional and award attorney fees to Apple in

the amount of $742,774.88.  Apple requests that the Court join ███ and hold it jointly liable for any

fee award.  Apple also requests that the Court hold Ramey LLP, William Ramey, Susan Kalra liable

for the payment of Apple's fees due to their vexatious, bad faith actions in this case, and to deter them

from continuing their practice of filing frivolous patent cases, including a sanction of $170,000 of

Apple's fees in accordance with 28 U.S.C. § 1927 for the vexatious filing of the FAC.

1

2   DATED: October 17, 2023

3                                               By:    /s/ Peter C. Magic
                                                          Peter C. Magic
4
                                                Peter C. Magic (CA SBN 278917)
5                                               **DESMARAIS LLP**
                                                101 California Street
6                                               San Francisco, CA 94111
                                                Telephone: 415-573-1900
7                                               Facsimile: 415-573-1901
                                                Email: pmagic@desmaraisllp.com
8
9                                               *Counsel for Defendant Apple Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document and all associated papers were served on October 17, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5-1(g).


*/s/ Peter C. Magic*
Peter C. Magic