Susan S.Q. Kalra (California State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993- 7499
Fax: (832) 900-4941

William P. Ramey, III (pro hac vice anticipated)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ALD SOCIAL, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| ALD SOCIAL, LLC,<br><br>                              Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>                              Defendant. | Case No.: 3:23-cv-02695-JSC<br><br>**PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR ATTORNEY FEES AND SANCTIONS**<br><br>**Date: November 30, 2023**<br>**Time: 10:00 a.m.**<br>**Courtroom: 8 - 19th Floor**<br>**Judge Jacqueline S. Corley** |

# TABLE OF CONTENTS

I.     INTRODUCTION AND BACKGROUND ............................................................1

II.    RELEVANT LAW ..........................................................................................2

III.   ARGUMENT ..................................................................................................5

   A.   Apple's Motion is Very Light on Conduct From this Case and Focuses Mainly
        on Other Unrelated Cases ........................................................................5

   B.   ALD attempted to Modify its Pleadings Based on the Court's Guidance
        Provided in its Order Dismissing the Case ...............................................6

   C.   After Receiving Apple's Rule 11 Letter, ALD Dismissed its Case...................9

   D.   ALD's Conduct Was Not Exceptional .........................................................9

        1.   Plaintiff did not seek nuisance value settlements .........................................10
        2.   Plaintiff conducted an adequate pre-suit investigation ...............................10

   E.   Apple's Comments that Ramey LLP Failed to Engage with Apple is Baseless.14

   F.   Fees are Not Warranted ............................................................................14

   G.   Sanctions Under §1927, Rule 11 or the Court's Inherent Power are not
        Warranted.................................................................................................15

IV.    APPLE'S FEE REQUEST IS EXTREME ............................................................15

V.     CONCLUSION................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  851 F.3d 1302 ................................................................20

*Browning v. Kramer*,
  931 F.2d 340 (5th Cir.1991) ............................................4

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) .....................4

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
  858 F.3d 1371 (Fed. Cir. 2017) .......................................17

Edwards v. Gen. Motors Corp.,
  153 F.3d 242 (5th Cir.1998) ...........................................16

*EscapeX IP LLC v. Google LLC*,
  2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) ............................6

*Fed. Deposit Ins. Corp. v. Maxxam, Inc.*,
  523 F.3d 566 (5th Cir. 2008) ...........................................5

*Gagne v. Maher*,
  594 F.2d 336 (2d Cir.1979) ...........................................17

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001) ..........................................4

*Gust, Inc. v. Alphacap Ventures*, LLC,
  905 F.3d 1321 (Fed. Cir. 2018) ........................................3

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  No. 2:20-CV-2766-JPM-TMP, 2023 WL 5826978 (W.D. Tenn. Sept. 8,
  2023) .................................................................19

*In re Keegan Management Co.*,
  78 F.3d 431 (9th Cir.1996) .............................................4

*Jenkins v. Methodist Hosp. of Dallas*,
  478 F.3d 255 (5th Cir. 2007) ...........................................5

*Lund v. Affleck*,
  587 F.2d 75 (1st Cir.1978) ............................................17

iii

*Mankes v. Vivid Seats Ltd.*,
  822 F.3d 1302 (Fed. Cir. 2016) ......................................................... 3

*Muscare v. Quinn*,
  680 F.2d 42 (7th Cir.1982) ............................................................... 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .................................................................... 3, 16

*Park-In-Theatres, Inc. v. Perkins*,
  190 F.2d 137 (9th Cir. 1951) ........................................................ 3, 16

*Stitt v. Williams*,
  919 F.2d 516 (9th Cir.1990) ............................................................... 4

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995) ............................................................... 4

United Energy Owners Comm., Inc. v. United States Energy Management
  Systems, Inc.,
  837 F.2d 356 (9th Cir. 1988) ............................................................... 5

*WPEM, LLC v. SOTI Inc.*,
  No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020),
  *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020) ..................................... 19

*ZT IP, LLC v. VMware, Inc.*,
  No. 3:22-CV-0970-X, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) ........... 19

**Constitutional Provisions & Statutes**

28 U.S.C. § 1927 ................................................................................. 4

35 U.S.C. § 285 ................................................................................. 2

**Rules & Regulations**

Fed. R. Civ. P. 11(b)(1) ..................................................................... 5

Rule 5-1(i)(3) ...................................................................................... 22

iv

ALD Social, LLC ("ALD") files this Response to Defendant Apple, Inc's ("Apple") Motion For Attorneys' Fees ("Defendant's Motion for Fees")[1] showing the Court that it should be denied because nothing rare happened in this case, it was normal litigation:

## I.    INTRODUCTION AND BACKGROUND

Plaintiff ALD Social, LLC ("ALD") sued Defendant Apple, Inc., ("Apple") alleging that Apple infringes U.S. Pat. Nos. 9,198,054 ("the '054 Patent") and 9,402,158 ("the '158 patent"), both entitled "Aggregate Location Dynometer (ALD)" (collectively, the "Patents-in-Suit") in the Western District of Texas, Waco Division.[2] On October 11, 2022, Apple filed a Motion to Dismiss ALD's Complaint for Failure to State a Claim ("Apple's Motion").[3] On February 17, 2023, Apple sent a letter to ALD's counsel requesting dismissal of the case.[4] On March 30, 2022, Apple filed a Motion to Transfer for improper venue and convenience.[5] After fully considering Apple's Motion to Transfer, ALD did not respond and the Court transferred the case to this Court, the Northern District of California.[6] This Court granted Apple's Motion to Dismiss with leave to amend on July 24, 2023.[7] ALD filed an amended complaint on August 14, 2013, dropping the '158 patent completely.[8] Apple filed a Motion to Dismiss the First Amended Complaint on August 28, 2023 ("Apple's Second Motion").[9] Apple sent a safe harbor Rule 11 letter to ALD's counsel on August 23, 2023, seeking dismissal of the First Amended

---

[1] Doc. No. 62.
[2] Doc. No. 1.
[3] Doc. No. 16.
[4] Doc. No. 63-9.
[5] Doc. No. 27.
[6] Doc. No. 32.
[7] Doc. No. 49.
[8] Doc. No. 51; 51-1.
[9] Doc. No. 53.

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR
ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC

Complaint.[10]  On October 2, 2023, ALD dismissed the First Amended Complaint without prejudice.[11]  On October 3, 2023, the Court issued a Clerk's Notice providing that as the dismissal was without prejudice, the hearing on Apple's Second Motion would stay on docket.[12] That same day, ALD filed a corrected notice of dismissal with prejudice.[13]  Apple's Motion for Fees followed.[14]

In summary, Plaintiff filed a complaint, Defendant moved to dismiss, the Court held a hearing and dismissed the complaint but, specifically granted leave to amend. Plaintiff attempted to amend its complaint in accordance with the Court's guidance, applying what it believed was a good faith claim construction and dropping one patent entirely.  Defendant filed another motion to dismiss and sent a letter to Plaintiff's counsel explaining why it believed ALD's amended complaint was not sufficient.  In response to the letter, and before Court intervention, Plaintiff voluntarily dismissed its case.  No discovery occurred.  No motions were filed by Plaintiff.  The case was very short lived, one year, and never progressed past the pleading stage.  In sum, nothing makes this case rare as it does not stand out from the rest.  This was normal litigation. The sanction of dismissal was adequate and no further sanction under Section 285 or otherwise is warranted.

## II.    RELEVANT LAW

The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands

---

[10] Doc. No. 63-12.
[11] Doc. No. 57.
[12] Doc. No. 58.
[13] Doc. No. 59.
[14] Doc. No. 62.

out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. A nonexclusive list of factors to consider includes frivolousness, motivation, objective unreasonableness as to facts or legal components of the case, and the need in particular circumstances to advance considerations of compensation and deterrence. *See Octane Fitness*, 572 U.S. at 554 n.6. The prevailing party must prove an "exceptional case" by a preponderance of the evidence. *See Id*. at 557-58.

Fees are not to be awarded "as a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 548-49 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). In areas of evolving law, "it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions." *See, e.g., Gust, Inc. v. Alphacap Ventures*, LLC, 905 F.3d 1321, 1329 (Fed. Cir. 2018).  A case is not necessarily exceptional necessitating a fee award even where a court determines the party applied an incorrect legal standard.  This is especially true in areas where the law is changing or where the party's pleadings can be taken as a good faith effort to change the law[15] or a reasonable basis under then existing law.

Section 1927 provides that a court may require an attorney to "satisfy personally the

---

[15] *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1312 (Fed. Cir. 2016).

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC

excess costs, expenses, and attorneys' fees reasonably incurred" when the attorney "multiplies the proceedings in any case unreasonably and vexatiously."[16]  However, a lawyer should not be sanctioned for failing to abandon his client's case at the drop of a motion, unless there is no colorable defense to the motion that can be advocated and no possible merit to any argument that can be advanced.[17]  The Supreme Court has cautioned that court's must find fraud or abuse of the judicial process sufficiently beyond 'exceptional' before it can invoke its inherent sanctioning power.[18]  The Ninth Circuit requires evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.[19]  "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith."[20] "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."[21]  Section 1927 only authorizes shifting fees that are associated with the persistent prosecution of a meritless claim.[22]

The Ninth Circuit is clear that an award of sanctions under a court's inherent authority must be preceded by a finding of bad faith, or conduct that constituted or was tantamount to bad faith.[23]

Rule 11 sanctions are not an appropriate remedy for this alleged misconduct since they

---

[16] 28 U.S.C. § 1927.
[17] *Stitt v. Williams,* 919 F.2d 516, 528 (9th Cir.1990).
[18] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
[19] *See In re Keegan Management Co.,* 78 F.3d 431, 436 (9th Cir.1996).
[20] *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir.1989).
[21] *Trulis v. Barton,* 107 F.3d 685, 694 (9th Cir. 1995)
[22] *Browning v. Kramer,* 931 F.2d 340, 345 (5th Cir.1991).
[23] *Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir. 2001).

4

are only available with regard to papers filed with the court, not attorney misconduct.[24] Rule 11 expressly requires that an attorney presenting a pleading, motion, or other paper before a court certify that the attorney has performed "an inquiry reasonable under the circumstances" such that he can verify that (1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims ... are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;" (3) "the factual contentions have evidentiary support or, ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[25] A Rule 11 analysis is a strictly objective inquiry and inquiries into any alleged motivation behind a filing are improper.[26]

### III.   ARGUMENT

#### A. Apple's Motion is Very Light on Conduct From this Case and Focuses Mainly on Other Unrelated Cases

Apple' Motion for Fees begins with the premise that ALD filed and then prolonged a frivolous case.[27]   And why does Apple contend the case was frivolous?  Because ALD chose the Western District of Texas ("WDTX") as venue for its suit and because this Court determined that allegations in Plaintiff's complaint were not plausible,[28] specifically the aggregation of current locations from the '158 patent[29] and crowd risk determinant.[30]  However, Apple cannot

---

[24] Fed.R.Civ.P. 11; *see also United Energy Owners Comm., Inc. v. United States Energy Management Systems, Inc.,* 837 F.2d 356, 364–65 (9th Cir. 1988).
[25] Fed.R.Civ.P. 11(b)(1)–(3).
[26] *Fed. Deposit Ins. Corp. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008); *Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255, 264 (5th Cir. 2007).
[27] Doc. No. 62 at 1-2.
[28] Doc. No. 62 at 1-2.
[29] Doc. No. 49 at 12.
[30] Doc. No. 49 at 14-15.

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR
ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC

get around the fact that WDTX is a location of likely venue, as the media reports Apple employs 7,000 in Austin (with room for 15,000)[31] and 8400 across the State of Texas.[32]  Moreover, while Apple alleges that the Emergency Notification System was not available in Texas,[33] Apple does not allege that the product was not developed in Texas, used in Texas or offered for sale in Texas. Thus, publicly available information and Apple's own pleading establishes the good faith basis for choosing WDTX for venue. Further, Apple did not deny all avenues of infringement. Additionally, after reviewing Apple's Motion to Transfer, ALD did not fight it and thus lowered the costs to both parties.[34]

After failing to establish that WDTX is an inappropriate venue, Apple refers to other unrelated litigations as somehow supporting its Motion for Fees.[35]  However, Apple cites no case holding that other unrelated cases are a factor in determining to sanction ALD or its counsel in this case, which is understandable given that the other unrelated cases have their own facts and own considerations.  Moreover, while Ramey LLP admits that courts in other unrelated cases did award fees under Section 285, none of the awards were under Section 1927 or a court's inherent power.  Additionally, Apple fails to inform the Court that the *EscapeX v. Google*[36] case is not yet final as appeal is being taken and that the *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 1:18-cv-05880, Dkt. 167 (S.D.N.Y. Nov. 12, 2019) magistrate recommendation was never

---

[31] https://therealdeal.com/texas/austin/2023/01/09/apple-plans-another-expansion-of-austin-office-campus/
[32] https://www.dallasnews.com/business/technology/2018/12/14/apple-makes-texas-sized-investment-with-plans-for-new-1-billion-campus-in-austin/#:~:text=Apple%20said%20it%20added%206%2C000,based%20semiconductor%20giant%20Texas%20Instruments.
[33] Doc. No. 62 at 5.
[34] Declaration of William P. Ramey, III ("Ramey Decl.") at ¶8.
[35] Doc. No. 62 at 1-4.
[36] *EscapeX IP LLC v. Google LLC*, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023); Ramey Decl. at ¶15.

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR
ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC

adopted by the district court and never became a final order.[37]  In short, Apple knowing this case is not exceptional, attempts to smear counsel for ALD.  The consideration of the other unrelated cases in support of Apple's Motion for Fees likely violates both ALD's and Ramey LLP's due process rights[38] as they have not had a chance to respond to the unrelated party's conduct in the other cases.

### B.  ALD attempted to Modify its Pleadings Based on the Court's Guidance Provided in its Order Dismissing the Case

ALD's Original Complaint was dismissed with leave to amend.[39]  The Court's Order provided guidance for ALD should it file an amended complaint.[40]  The Court did not hold that ALD failed to plead every element but rather only a few limitations, the "crowd risk determinant" limitation and the '158 patent's "location aggregation" limitation.[41]  Therefore, ALD only modified what the Court said was not sufficient.  ALD did not modify elements the Court noted were plead properly for the '054 patent.  Specifically, the Court noted that (1) "network monitor" and (2) "location aggregator" for the '054 patent were plead properly.[42]  Thus, it is not surprising that large portions of the Amended Complaint are the same as the Original Complaint.  To address the "aggregation of current locations," from the '158 patent, ALD dropped assertion of the '158 patent.

In addressing the "crows risk determinant" issue noted by the Court, ALD provided a substantially modified chart in an attempt to provide argument why its proposed construction for

---

[37] Ramey Decl. at ¶15.
[38] As well as the constitutional rights of Ramey LLP and its lawyers.
[39] Doc. No. 49 at 15.
[40] Doc. No. 49 at 13-15.
[41] Doc. No. 49 at 15.
[42] Doc. No. 49 at 7-12.

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR
ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC

"crowd risk determinant" was not implausible.[43]  Exhibit A is a comparison document showing that 74 changes were made to the claim chart in the Amended Complaint, comprising replacements, insertions and deletions.[44]

ALD's original chart for "crowd risk determinant" provided:

> Apple's Exposure Notifications System includes an algorithm for determining risk after finding a match from the key data. The Exposure Notifications System can use the algorithm to determine exposure risk value based on risk parameters including but not limited to exposure proximity and duration. *See* https://developer.apple.com/documentation/exposurenotification/enexposureconfiguration; https://developer.apple.com/documentation/exposurenotification/enexposureconfiguration/exposure_risk_value_calculation_in_exposurenotification_version_1; and https://developer.apple.com/documentation/exposurenotification/exposure_parameter_limits.
>
> The following exemplifies this limitation's existence in Accused Systems: [45]

After noting the Court's Order, ALD provided a revised explanation in an effort to illustrate the plausibility of its position:

> The claim limitation for a crowd risk determinant does not require a contemporaneous determination or prediction of crowd risk and therefore Apple's Exposure Notifications System meets this limitation. The Exposure Notifications System includes an algorithm for determining exposure risk after finding a match from the key data. After a user submits a positive COVID-19 test result to the Exposure Notifications System through a public health authority app, the system can use the algorithm to determine exposure risk value based on risk parameters including but not limited to exposure proximity and duration. The algorithm also takes an infectiousness weight into account, based on the affected user's infectiousness level for the day of exposure relative to the day of symptom onset. The Exposure Notifications System can approximate distance using the signal strength of the Bluetooth signals, allowing for an aggregation of relative locations of wireless devices which can be used for the determination of exposure risk. *See* https://developer.apple.com/documentation/exposurenotification/enexposureconfiguration; https://developer.apple.com/documentation/exposurenotification/enexposureconfiguration/exposure_risk_value_calculation_in_exposurenotification_version_1; and https://developer.apple.com/documentation/exposurenotification/exposure_parameter_limits.
>
> [46]

ALD's revisions explained its position that the claim limitation for a crown risk determinant does not require a contemporaneous determination or prediction of crowd risk.  ALD explained

---

[43] Doc. No. 51-1 at 27 of 33 to 31/33.
[44] Ex. A at 1, to the Ramey Decl.
[45] Doc. No. 1-1 at 42/55.
[46] Doc. No. 51-1 at 27/33.

that the ENS includes an algorithm for determining exposure risk after finding a match from the key data.  Specifically, after a user submits a positive COVID-19 test result to the ENS, the system can use the algorithm to determine exposure risk value based on risk parameters including exposure proximity and duration.  ALD further provided that the algorithm takes into account the infected user's infectiousness level for the day of exposure relative to the date of infection and that the ENS can approximate distance using signal strength of the blue tooth signals for allowing an aggregation of relative locations.  ALD provided reference to 4 weblinks where is obtained this information.  ALD further added additional evidence for this element that it believed show infringement:

The following exemplifies this limitation's existence in Accused Systems:

## Configure Criteria to Estimate Risk

The framework will compare locally saved interaction data against the diagnosis keys provided by the app. When the framework finds a match, it calculates a risk score for that interaction based on a number of different factors, such as when the interaction took place and how long the devices were in proximity to each other.

To provide specific guidance to the framework about how risk should be evaluated, the app creates an ENExposureConfiguration object. The app requests the criteria from the Server object, which creates and returns an ENExposureConfiguration object as shown below. The sample configuration has placeholder data that evaluates any interaction as risky, so the framework returns all interactions that match the diagnosis keys.

Source:
(https://developer.apple.com/documentation/exposurenotification/building_an_app_to_notify_users_of_covid-19_exposure) [47]

And

---

[47] Doc. No. 51-1 at 27/33.

The infectiousness weight modifies the ERV based on the affected user's infectiousness level for the day of exposure relative to the day of symptom onset. To set the infectiousness level for when there is no symptom onset date provided, use ENDaysSinceOnsetOfSymptomsUnknown. A user's infectiousness level can be ENInfectiousness.high, ENInfectiousness.standard, or ENInfectiousness.none. Assign both infectiousnessHighWeight and infectiousnessStandardWeight a value between 0 percent and 250 percent.

The weighted infectiousness indicates days −14 to −6 from the current day with no infectiousness, days −5 to −3 with 100 percent of standard infectiousness, days −2 to +5 with 200 percent high infectiousness, days +6 to +10 with 100 percent standard infectiousness, and days +11 to +14 with no infectiousness.

**Source:** (https://developer.apple.com/documentation/exposurenotification/enexposureconfiguration)

Apple's Exposure Notifications System is not limited to interactions only between two individuals. The System is meant for the public at large to determine how many Covid 19 tested positive individuals a user has been exposed to. Apple confirms that the System is meant for a large group of users by stating in the quote below ". . . for the beacons that have been verified as belonging to **people** confirmed as positive for COVID-19. (Emphasis added.)

At least once per day, the system will download a list of the keys for the beacons that have been verified as belonging to people confirmed as positive for COVID-19. Each device will check the list of beacons it has recorded against the list downloaded from the server. If there is a match between the beacons stored on the device and the positive diagnosis list, the user may be notified and advised on steps to take next.

Thus, an individual user can use the System to determine if he or she has been exposed to a crowd of COVID-19 tested positive people and it can notify "public health authorities" to determine if there is a risk of an individual or people who have tested positive and allow public health authorities to use contact tracing to determine the risk to others from the people who have tested positive.

[48]

In short, ALD went to great lengths to comply with the Court's Order after the Original Complaint was dismissed.

### C. After Receiving Apple's Rule 11 Letter, ALD Dismissed its Case

ALD filed its amended complaint on August 14, 2023.[49]  Apple's safe harbor Rule 11

---

[48] Doc. No. 51-1 at 30/33.
[49] Doc. No. 51.

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR
ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC

letter requested ALD to dismiss its First Amended Complaint.[50]  After reviewing the letter and discussing it with counsel, ALD contacted Apple seeking a dismissal with prejudice where each party would bear their own fees and costs.[51]  However, Apple responded that they reserved the right to seek fees and costs.[52]  On October 2, 2023, ALD dismissed the First Amended Complaint without prejudice in hopes to continue the discussion about dropping with prejudice with Apple.[53]  However, based the Clerk's Notice providing that because the dismissal was without prejudice, the hearing on Apple's Second Motion would stay on docket,[54] ALD filed a corrected notice of dismissal with prejudice.[55]  ALD was dismissing the action to avoid court intervention and did not want the parties to incur the expense of the hearing.[56]

### D.  ALD's Conduct Was Not Exceptional

#### 1.  Plaintiff did not seek nuisance value settlements

Apple's Motion makes the unsupported statements that ALD sought nuisance value settlements[57] without any evidentiary support.  Oddly, Apple fails to attach the settlement offer actually made in this case, an offer that was made while this case was in its infancy, a month after filing.  Exhibit B is a copy of an e-mail from William P. Ramey, III to Stephen Burbank, offering $250,000 to resolve the case.  The e-mail notes that that Plaintiff considers this a steep reduction in the value of the patent and that the offer would go up if Apple answered or otherwise plead.  While to Apple, $250,000, a month into a case, may seem small, the amount is not a

---

[50] Doc. No. 63-12.
[51] Ramey Dec. at ¶14.
[52] Ramey Dec. at ¶14.
[53] Doc. No. 57; Ramey Dec. at ¶14.
[54] Doc. No. 58.
[55] Doc. No. 59.
[56] Ramey Dec. at ¶14.
[57] Doc. No. 62 at 1.

nuisance value but rather a value calculated on the posture of the case.[58] ALD's offer was very specific on the reasoning for its value, the early-stage of the litigation.

### 2. Plaintiff conducted an adequate pre-suit investigation

Apple first claims that ALD did not conduct an adequate pre-suit investigation based on its applied claim construction for "aggregation of current locations."[59] ALD's position on the term is that "current" refers to the data when collected, i.e. it is collected from the current location of the wireless device. ALD based its proposed construction, at the pleading stage, on references in the specification and the canons of claim construction:[60]

- Current location services are generally focused on individual wireless device user applications. Doc. No. 55-1 at col. 1, ln. 28-29 ("1:28-29");
- Current location information be obtained from the wireless devices themselves. Doc. No. 55-1 at 2:65-66;
- In the event of a possible or probable or current public safety risk. Doc. No. 55-1 at 4:55-56; and,
- Historical databases preferably store sets of aggregate current location information pertaining to trackable wireless devices. 4:59-61.[61]

Based on the specification cites, given that no claim construction has occurred, ALD believed a plausible reading of current is not that it must be contemporaneous, but rather that it describes the type of data collected from the wireless devices or that current means "possible or probable" when used with risk.[62]  ALD was of the opinion that Apple's reading incorporated limitations into the patent that are not required by the claim. For example, Apple's highlight of "a few days later" in its brief was not believed to alter what "current" location meant in the claim. ALD

---

[58] Ramey Dec. at ¶18.
[59] Doc. No. 62.
[60] Ramey Dec. at ¶9.
[61] Ramey Dec. at ¶9.
[62] Ramey Dec. at ¶9.

believed that the data collected by Bluetooth beacons is later acted on in the form of a notification has nothing to do with the data collected by the Bluetooth beacons which was current data when collected.[63]   ALD strongly believed in its position because that is what ALD thought the specification described.  ALD fully acknowledges the Court found otherwise and based on the Court's Order dismissing the case, ALD dropped the '158 patent completely. In other words, ALD attempted to fully comply with the Court's Order, but prior to that Order ALD was operating on a good faith belief on what the patent specification taught.  ALD believed it had a good faith claim construction position when it filed the suit as none of the constructions run contrary to what ALD believed was taught by the specification or canons of patent law.[64]

In responding to Apple's First Motion to Dismiss, ALD provided for "crowd risk" determinant:

> Apple's Exposure Notifications System includes an algorithm for determining risk after finding a match from the key data. The Exposure Notifications System can use the algorithm to determine exposure risk value based on risk parameters including but not limited to exposure proximity and duration
>
> Referring to ADL's claim charts, parts of which have been specifically referenced above, Apple's Accused Instrumentalities monitor every interaction between two or more people, including crowded gatherings of any kind, and assesses the individual and unique risk of COVID-19 exposure of every individual in the crowd [considering factors such as each individual's distance from the person identified as having COVID-19 and the length time of each contact], thus determining and assessing "crowd risk". Then, the Accused Instrumentalities calculates the individual risk of every member of the crowd and provides each individual with a notice of exposure.

[65]   and for "location

---

[63] Ramey Dec. at ¶9.
[64] Ramey Dec. at ¶9.
[65] Doc. No. 23 at 9.

13

aggregator," ALD provided:

> Referring to the claim charts to the '054 and '158 Patents:
>
>> Apple's Exposure Notifications System includes an algorithm for determining risk after finding a match from the key data. The Exposure Notifications System can use the algorithm to determine exposure risk value based on **risk parameters including but not limited to exposure proximity** and duration.[14]
>
> As alleged in ALD's Complaint and claim charts, the Accused Instrumentalities measure the distance between an individual with COVID-19 and every other member of the crowd or group
>
> [66],

in the good faith belief that its pleadings provided fair notice to Apple. ALD and its counsel acknowledge that the Court found otherwise.[67]

Apple next claims Plaintiff's First Amended Complaint ignores the Court's Order.[68] However, Plaintiff made 75 changes to the claim charts in an effort to comply.[69] Plaintiff has attached as Exhibit A, a comparison report of the amended claim charts compared to the original claim charts.[70] This is not a case where ALD presented the same infringement charts after being told by the Court it was defective. Rather, this is a case where ALD took the Court's Order and applied it by trying to explain why construction it wanted was not implausible. ALD acknowledges the Court determined that the changes were not sufficient. However, simply because a party loses does not make a case exceptional.

Further, Plaintiff conducted a detailed pre-suit investigation prior to filing the lawsuit. William Ramey of Ramey, LLP worked with Eric Morehouse and Erik Lund in preparing the

---

[66] Doc. No. 23 at 9.
[67] Ramey Decl. at ¶10.
[68] Doc. No. 62 at 12-15.
[69] Ex. A at 1.
[70] Ramey Decl. at ¶13.

charts.[71]  Morehouse has over 20 years of experience as a patent attorney drafting claim charts and reviewing infringing products.[72]  Lund is a licensed attorney in Virgina also practicing with Whitestone Law with years drafting claim charts and comparing infringing products.[73]

AiPi provided litigation support, but no suit was filed until Ramey decided the claim charts were sufficient and the complaint adequate.[74]

### E.  Apple's Comments that Ramey LLP Failed to Engage with Apple is Baseless

There simply is no evidence that Ramey LLP failed to respond to Apple.  In fact, Apple communications confirm that Ramey LLP did participate in the litigation.[75]  The parties each adjusted their schedules to make themselves available to confer, just as in normal litigation.[76]

Apple's comments that somehow not responding to the Motion to Transfer supports sanction is obtuse. Ramey LLP, after reviewing the motion, agreed that transfer was appropriate and at least not worth the fight to oppose.[77]  Had Ramey LLP opposed, it is likely Apple would be saying that Ramey LLP's position lacked merit and deserves a sanction.  Apple appears to contend that every action in this case warrants sanction, but an objective review shows that this was just patent litigation, and nothing unusual.

### F.  Fees are Not Warranted

Apple failed to argue that it did not infringe the features of any of the asserted claims of the Patents-in-Suit throughout these brief proceedings.  ALD litigated in a timely and reasonable

---

[71] Ramey Decl. at ¶¶3-7.
[72] Ramey Decl. at ¶3.
[73] *Id.*
[74] Ramey Decl. at ¶7.
[75] Ex. C, to the Ramey Decl.
[76] Ramey Decl. at ¶7.
[77] Ramey Decl. at ¶7.

matter responding to the Court's instructions.  Fees are not to be awarded "as a penalty for failure to win a patent infringement suit." *Octane Fitness,* 572 U.S. at 548-49 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)).  Here, ALD tried at every turn to modify its complaint as directed by the Court.[78]  This is not a case where ALD litigated meritless positions but rather a case that is still in the pleading stage.  ALD was prepared to test the merits of its infringement position[79] and there is no evidence to the contrary.  Even though the Court found the pleadings deficient, the sanction of dismissal was adequate and no further sanction under Section 285 is warranted.

### G. Sanctions Under §1927, Rule 11 or the Court's Inherent Power are not Warranted.

Apple has made no showing that counsel for ALD should be independently sanctioned.  There is simply no "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[80]  Here, the case was at the pleading stage.  The Court dismissed the pleading.  Two law firms got together and revised the claim charts in an effort to comply with the Court's Order[81] and ultimately dismissed the complaint without requiring further judicial action.[82]  This is routine litigation and there is no evidence to the contrary.  Apple's request for sanctions against counsel for ALD is designed to have a chilling effect on Ramey LLP and its ability to file lawsuits, is inappropriate and without legal basis.  Apple has presented no evidence to the Court that Ramey LLP's conduct (or the conduct of its lawyers) warrants sanction under Section 1927,

---

[78] Ramey Decl. at ¶13.
[79] Ramey Decl. at ¶17.
[80] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).
[81] Ramey Decl. at ¶¶3-7.
[82] Doc. No. 59.

the inherent power of the Court or Rule 11.   There simply no evidence to overcome the presumption that the lawsuit was filed in good faith.[83]

## IV.    APPLE'S FEE REQUEST IS EXTREME

Apple asks this Court to find this case so "exceptionally weak" to warrant attorney fees yet also find it was reasonable for Desmarais LLP ("DLLP") to take two months and at least a quarter of a million dollars to make that determination.[84] Yet, a reasonable analysis shows that Apple's positions is extreme and unsupported by a fair assessment of work performed on the case.

Despite Apple's allegation that this case was "clearly exceptional and baseless from the moment [it was] filed," it spent $490,416.70 between October 2022 – January 2023 assessing and preparing to ultimately send a February 17, 2023, Letter to ALD regarding Apple's perceived flaws in the case.[85] That Apple was willing to pay nearly half a million dollars for a letter does not justify an award of such unreasonable legal spend. See *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982) (district judge had discretion to deny the plaintiff's second fee request for preparing fees in its entirety: "If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation ...."), quoting *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir.1979), and citing *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("if the attorney's initial claims are exorbitant, or the time spent advancing them unreasonable, the district court should refuse the further compensation").

---

[83] *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).
[84] *See* Doc. No. 62 at 16; Doc. No. 62-1 at 7-8 (Desmarais LLP billing $250,000 for "assessments of the case merits and allegations" in Oct. 2022 – Nov. 2022).
[85] Doc. No. 62-1 at 7-9.

In contrast, Apple only paid $131,930.01 for work done on the Motion to Dismiss Hearing and Second Motion to Dismiss in July and August 2023.[86] The obvious discrepancy between how much DLLP allegedly charged for assessing what it felt was a weak case and actually doing the work suggests DLLP's extreme fee ask is merely an attempt to justify its unreasonable cost of assessment to its client.

For example, DLLP categorized this case as having damages in the range of $10M to $25M because "Apple has been repeatedly faced with non-meritorious cases seeking damages in the tens of millions and even hundreds of millions."[87] The frequency Apple gets sued has nothing to do with the present case. It is entirely conjecture on DLLP's part to assume this case falls in the second highest risk category for damages.[88] Here, DLLP simply anchored its fees beyond what is reasonable by classifying it with more complex cases requiring higher legal spend.

Furthermore, Apple's cited cases fail to justify its extreme fees are "within range of what courts have found reasonable in similar circumstances." [89] Rather, Apple's cited case are significantly different and required more work and attorney time to reach such drastic fee awards. For example, in *Digital Empire Limited*, six members of the prevailing firm worked on the case for well over a year through discovery and multiple motions.[90] In contrast, here, three members of DLLP filed only three motions, and did not even work on the case for three consecutive months.[91]

---

[86] Doc. No. 62-1 at 7-8.
[87] Doc. No. 62 at 32.
[88] Doc. No. 62-5 at 25.
[89] Doc. No. 62 at 32.
[90] *See* Doc. No. 62-12.
[91] Doc. No. 62-1 at 7.

18

Comparable case law suggests that DLLP's fees should have been much lower and even Apple's other cited cases are nowhere near a range to justify the present fee request. In *ZT IP, LLC* the court awarded $92,130.35; in *WPEM, LLC* the court awarded $179,622; and in *Hawk Technology Systems, LLC* the court awarded $106,723. *See ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, at *5 (N.D. Tex. Feb. 6, 2023); *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *8 (E.D. Tex. Feb. 4, 2020), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-CV-2766-JPM-TMP, 2023 WL 5826978, at *12 (W.D. Tenn. Sept. 8, 2023).

Finally, despite the case residing in Texas for the first sixth months of work, Apple seeks to use San Francisco based patent infringement data for its recent survey.[92] Even assuming the legal work became three times more expensive simply because of the transfer to California, Apple fails to explain why its fees should not be compared to the much lower averages for Texas where most of this case occurred.

Thus, even with an unjustified categorization of $10-25M in damages and tripling the price of case management by virtue of transfer to California, Apple's requested fees balloon far above the AIPLA Mean of $514,000—for a case that was dismissed at the pleading stage and DLLP did not work on for 3 months.[93] Apple's requested fees are unreasonable and excessive and this Court should deny Apple's request.

## V.    CONCLUSION

--------------------------------------------------------

[92] Doc. No. 62-1 at 18.
[93] Doc. No. 62-1 at 16,18.

Apple's Motion fails to show: (1) that the plaintiff did not conduct an adequate pre-filing investigation or exercise due diligence before filing suit; or (2) that ALD should have known its claim was meritless and/or lacked substantive strength. See *Bayer CropScience AG v. Dow AgroSciences LLC*.[94] Defendant has simply not proven an "exceptional case" by a preponderance of the evidence. For all the foregoing reasons, Defendant's Motion for Fees should be denied.

Dated: October 31, 2023                          Respectfully submitted,

                                                 RAMEY LLP

                                                 */s/ Susan S.Q. Kalra*
                                                 Susan S.Q. Kalra, CA SBN 167940
                                                 Email: skalra@rameyfirm.com
                                                 5020 Montrose Blvd., Suite 800
                                                 Houston, Texas 77006
                                                 Telephone: (800) 993- 7499
                                                 Fax: (832) 900-4941


                                                 William P. Ramey, III (pro hac vice
                                                 anticipated)
                                                 Email: wramey@rameyfirm.com
                                                 RAMEY LLP
                                                 5020 Montrose Blvd., Suite 800
                                                 Houston, TX 77006
                                                 Telephone: (713) 426-3923
                                                 Fax: (832) 689-9175

                                                 *Attorneys for Plaintiff*
                                                 ALD SOCIAL, LLC

---

[94] No. 12-256, 2015 WL 1197436, at *4 (D. Del. Mar. 15, 2015), aff'd, 851 F.3d 1302 (Fed. Cir. 2017.

PLAINTIFF ALD SOCIAL, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR
ATTORNEY FEES AND SANCTIONS - CASE NO.: 3:23-CV-02695-JSC