John M. Desmarais (CA SBN 320875)
Peter C. Magic (CA SBN 278917)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901
Email: jdesmarais@desmaraisllp.com
Email: pmagic@desmaraisllp.com

Jennifer M. Przybylski (*pro hac vice*)
Asim Zaidi (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jprzybylski@desmaraisllp.com
Email: azaidi@desmaraisllp.com

*Counsel for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ALD SOCIAL LLC,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 3:23-cv-02695-JSC

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEY FEES AND SANCTIONS**

**Oral Argument Requested**
**Jury Trial Demanded**

Date: November 30, 2023
Time: 10:00 a.m.
Courtroom: 8 - 19th Floor
Judge Jacqueline S. Corley

# TABLE OF CONTENTS

**Pages**

I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ..........................................................................................................2

A. This case is exceptional due to ALD's frivolous positions on the merits and venue, and ALD offers no legitimate justification for any of those positions. ........2

1. ALD offers no justification for why it asserted infringement of the "crowd risk" element of either asserted patent. ..........................................3

2. ALD's new justification for why it asserted infringement of the "current location" element of the '158 patent is nonsensical. .....................5

3. ALD's argument that it had a basis for proper venue reveals that its "basis" was solely *speculation* that Apple might have created the Exposure Notification system in the Western District of Texas. ................6

B. The Court should join AiPi—which ALD has not opposed—as well as the lawyers from Whitestone Law whom ALD has outed as heavily involved in preparing both complaints. .......................................................................8

C. Mr. Ramey and Ms. Kalra acted in bad faith or engaged in a reckless pursuit of frivolous arguments that amounted to bad faith, warranting sanctions under Section 1927 and the Court's inherent power. ......................................................9

D. The fees Apple seeks are reasonable. ...................................................................12

III. CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Power Corp. v. Overhead Elec. Co.*, 60 Cal. App. 3d 272 (1976) ....8

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 484 F.3d 162 (2d Cir. 2007)....15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182 (2d Cir. 2008)....15

*Craig v. PopMatters Media, Inc.*, No. 18-cv-1713-SMY, 2022 WL 3026856 (S.D. Ill. Aug. 1, 2022)....10

*Eon-Net L.P. v. Flagstar Bancorp*, No. C05-2129RSM, 2010 WL 2026756 (W.D. Wash. May 17, 2010) ....13

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011)....6, 14

*EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) ....4

*Gagne v. Maher*, 594 F.2d 336, 343-344 (2d Cir. 1979) ....15

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-cv-2766, 2023 WL 5826978 (W.D. Tenn. Sept. 8, 2023) ....9

*Lund v. Affleck*, 587 F.2d 75, 77-78 (1st Cir. 1978)....15

*Manez v. Bridgestone Firestone N. Am. Tire LLC*, 533 F.3d 578 (7th Cir. 2008) ....8, 9

*Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir. 1982) ....15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)....6

*Pascual v. WellsFargo Bank, N.A.*, No. 4:13-cv-02005, 2014 WL 582264 (N.D. Cal. Feb. 13, 2014)....10, 12

*Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) ....8, 9

**Pages**

*Phonometrics Inc. v. Economy Inns of Am.*, 349 F.3d 1356 (Fed. Cir. 2003)....................5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)....................6

*Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019)....................4

*Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951 (E.D. Tex. Mar. 29, 2022)....................5

*Traxcell Techs., LLC v. Google LLC*, No. 6:21-cv-1312-ADA, 2022 WL 3593054 (W.D. Tex. Aug. 22, 2022) ....................12

*ZT IP, LLC v. VMware*, No. 3:22-cv-0970, 2023 WL 1785769, *3 (N.D. Tex. Feb. 6, 2023) ....................9, 10, 12

**Statutes**

28 U.S.C. § 1400(b) ....................7

28 U.S.C. § 1927....................9, 10, 12, 15

35 U.S.C. § 101....................13

35 U.S.C. § 271....................7

35 U.S.C. § 285....................4, 9, 15

42 U.S.C. § 1973....................15

42 U.S.C. § 1988....................15

Cal. Code of Civ. P. § 410.10 ....................8

**Court Rules**

Federal Rule of Civil Procedure 20(a)(2) ....................8

L.R. 7-3(b) ....................12

L.R. 7.1 ....................8

Federal Rule of Civil Procedure 11 ....................1, 3, 13

## I. INTRODUCTION

ALD abstracts away the details of its exceptional behavior in this case to assert that "[t]his was normal litigation." Dkt. 66 at 1. It was far from normal. ALD's complaint against Apple was found by the Court to suffer from not one, but two, implausible bases for asserting patent infringement. While that fate is rare in a patent case, it was not rare for ALD—courts have dismissed four of ALD's complaints against other defendants as implausible. ALD also failed to investigate proper venue, ignoring public information that the accused Exposure Notification (EN) service was not available in Texas, then persisted in its baseless venue assertions when it refused to consent to transfer before Apple moved to transfer, yet then failed to file any opposition brief. After the case was transferred and the Court dismissed the original complaint, ALD filed an amended complaint (FAC) that continued to assert infringement of the "crowd risk" element on the same theory the Court found implausible. Apple then sent ALD a letter notifying it that the FAC was baseless, and ALD failed to respond before Apple's deadline for moving to dismiss, forcing Apple to move. Finally, after Apple served ALD with a draft motion for sanctions under Rule 11, ALD still refused to dismiss the case with prejudice until just before its egregious behavior would be laid bare in open court. That is not normal litigation. That is the tale of a frivolous case.

ALD's brief offered no justification for its initial or continued assertion of infringement of the "crowd risk" element. As to the element regarding aggregation of "current location," ALD offers the baseless argument that it believed that the element required aggregation of location information that was merely current at some time in the past, or in the alternative, meant "possible or probable" location. But those arguments have no support in the relevant patent and defy ordinary usage of "current." Regarding venue, ALD argues only that it speculated at the time of filing that Apple might have made EN in Texas because Apple employs people in Texas (among many other states). ALD offered no facts substantiating that any Apple employee worked on EN in Texas—in fact, none did, as explained in Apple's motion to transfer—rendering ALD's allegation implausible. In sum, ALD's brief failed to provide any legitimate reason behind the three aspects of its complaint that lacked plausibility. Unfortunately, this case was typical for Ramey LLP, whose clients have been found liable for fees or costs stemming from exceptional cases at least 15 times.

But ALD and Ramey LLP were not the only culpable actors. They had help. ALD's brief does not dispute that AiPi Solutions controls ALD, that ALD is a judgment-proof shell company, and that AiPi should be joined to this case. ALD's brief reveals that attorneys Eric Morehouse and Erik Lund of Whitestone Law helped Ramey LLP draft both complaints as part of support provided by AiPi. The Court should bring those attorneys out of the shadows by joining them to this case, and should hold them jointly and severally liable for any fees award because of their participation in creating the baseless complaints in this case.

Finally, ALD quibbles with the fee amount Apple requested, but offers no amount it contends is reasonable. ALD acknowledges comparable cases awarded $92,130.35 to $179,622, but those cases are on the far low end of the comparable cases cited by Apple. For the reasons stated in Apple's opening brief, fees of $740,481.55 for the entire case are reasonable, and fees of $167,706.67 for work Apple's counsel performed after ALD filed the amended complaint is reasonable.[1]

## II. ARGUMENT

### A. This case is exceptional due to ALD's frivolous positions on the merits and venue, and ALD offers no legitimate justification for any of those positions.

ALD and Ramey LLP[2]—as well as AiPi and its attorneys at Whitestone Law—filed a complaint in which they alleged three things with no plausible basis:

- an assessment of whether one individual was at risk of COVID exposure from another individual constituted a "crowd risk";
- an alleged act of aggregation of location information days after the location was allegedly collected was an act of aggregating "current location"; and
- venue was appropriate in the Western District of Texas notwithstanding that ALD's complaint cited nothing plausibly establishing that Apple made or offered the Exposure Notification system in that district.

After Apple notified ALD that venue was not proper in WDTX, ALD refused to consent to transfer, forcing Apple to file a motion to transfer, and then ALD failed to file an opposition brief to Apple's motion. After the case was transferred, the Court found both of the points above regarding

[1] As previewed in Apple's Opening Brief (Dkt. 62 at 22 n.16), Apple now slightly reduces the amount sought for September 2023—which reduces by a few thousand dollars the overall amounts Apple seeks—based on the amount Apple actually paid its counsel for their September work, which it paid on October 19, 2023 after it filed the opening brief. Supp. Magic Decl. ¶¶ 3-5; Magic Ex. O.

[2] As a shorthand, Apple will use "ALD" to refer to both ALD and Ramey LLP throughout the brief.

alleged infringement implausible and dismissed the complaint with leave to amend. ALD, with the help of Whitestone Law and AiPi, then filed an amended complaint that asserted that an assessment of whether one individual was at risk of COVID exposure from another individual constituted a "crowd risk." ALD then dismissed the complaint only after Apple moved to dismiss the amended complaint and served Ramey LLP with a draft motion for Rule 11 sanctions. Those are the reasons, along with ALD's repeated failure to engage with Apple's letters and motions, that this case stands out from others as frivolous.

ALD's opposition fails to offer any legitimate justification for ALD's meritless positions. ALD offers no justification for why it asserted infringement of the "crowd risk" element of either asserted patent and ALD's new justification for why it asserted infringement of the "current location" element of the '158 patent is nonsensical.[3] And ALD's argument that it had a basis for proper venue reveals that its "basis" was solely speculation that Apple might have created the Exposure Notification system in the Western District of Texas.

**1. ALD offers no justification for why it asserted infringement of the "crowd risk" element of either asserted patent.**

Nowhere in ALD's brief does it present any justification for its decision to assert in its original complaint that an assessment of whether one ***individual*** was at risk of COVID exposure from another ***individual*** constituted a "***crowd*** risk." ALD argues it conducted a "detailed pre-suit investigation" in which Mr. Ramey "worked with" two attorneys from another law firm that has not appeared in this case, pursuant to an "agreement between AiPi and Ramey LLP," in order to prepare the original complaint. *See* Dkt. 66 at 14-15 & n.71 (citing Ramey Decl. ¶¶ 3-7); Dkt. 66-2 (Ramey Decl.) ¶¶ 3-7 ("I also used resources including litigation support services from AiPi, including Eric Morehouse and Erik Lund" of Whitestone Law).[4] Mr. Ramey declares that Mr. Morehouse and Mr. Lund helped him prepare the original complaint from September 7 to September 16 in 2022. Dkt. 66-2 (Ramey Decl.)

---

[3] In one of the more egregious misstatements in its brief, ALD states that "Apple failed to argue that it did not infringe the features of any of the asserted claims of the Patents-in-Suit through these brief proceedings." Dkt. 66 at 15. In fact, ALD's failure to plausibly plead infringement—and that ALD's claims ***contradicted*** infringement—was the basis for both of Apple's motions to dismiss.

[4] The Court should join Mr. Morehouse and Mr. Lund to this case and hold them jointly and severally liable for any fee award. *See* Section II.B, *infra*.

¶¶ 6-7. But it makes no difference whether Mr. Ramey, Mr. Morehouse, and Mr. Lund spent 9 days[5] or 90 days preparing the complaint—it does nothing to justify conflating an individual with a crowd.

Nor does ALD offer any justification for continuing to point to the same accused feature—determining an individual's risk of COVID exposure—as "crowd risk" in its amended complaint. ALD's only argument on this issue is that it (with Mr. Morehouse and Mr. Lund of AiPi) "made 75 changes to the claim charts in an effort to comply" with the Court's order dismissing the original complaint. Dkt. 66 at 14; *see id.* at 7-10 (describing changes). That proves nothing. What matters is whether ALD followed the Court's guidance that "the term 'crowd risk' cannot plausibly be construed to include the likelihood of an individual's past exposure to COVID-19." Dkt. 49 at 15. ALD did not.

ALD does not even attempt to show that the edits to its claim chart pointed to a different feature of EN to meet that element. Instead, ALD says its claim chart added an argument that "a crown [sic] risk determinant does not require a contemporaneous determination or prediction of crowd risk." Dkt. 66 at 8. And ALD identified document excerpts it added to its claim chart that provide details on how a "risk score" is calculated for an individual. Dkt. 66 at 9-10. None of that changes the fact that ALD's revised chart continued to point to EN's determination of whether one individual was at risk of COVID exposure from another individual as "crowd risk"—a fact ALD has not denied. *See* Dkt. 62 (Apple Br.) at 12-13. Finally, ALD shows an excerpt of its amended claim chart in which it added a bare contention that "an individual user can use the System to determine if he or she has been ***exposed to a crowd*** of COVID-19 tested positive people." Dkt. 66 at 10 (emphasis added). That is false, unsupported, and contrary to the Court's description of how EN works. *See* Dkt. 49 at 3-5, 14-15.

In sum, ALD's assertion that an assessment of whether an individual was at risk of COVID exposure from another individual constituted a "crowd risk" was baseless in the original complaint and amended complaint. *See, e.g.*, *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed. Cir. 2019) (affirming district court's finding of inadequate pre-suit investigation into infringement as a basis for finding the case exceptional under § 285); *EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691, *1 (N.D. Cal. Aug. 16, 2023) ("It is obvious that EscapeX [represented

[5] Mr. Ramey clearly did not even spend 9 days preparing this case since during that same 9-day period he filed 17 cases, with Mr. Ramey signing each complaint. *See* Dkt. 63-2 at 19 (showing cases filed by Ramey LLP in that time period).

by Mr. Ramey] conducted no serious pre-suit investigation and that this case was frivolous from the start.") (finding case exceptional). ALD's continued pursuit of a theory already rejected by the Court renders this case exceptional. *See Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951, *4-6 (E.D. Tex. Mar. 29, 2022); *c.f.*, *Phonometrics Inc. v. Economy Inns of Am.*, 349 F.3d 1356, 1362-1363 (Fed. Cir. 2003) (affirming award of sanctions against party and attorney where they persisted in "advocating legal theories which [the attorney] knew were no longer tenable" following another court's determination of the scope of the patent at issue).

**2. ALD's new justification for why it asserted infringement of the "current location" element of the '158 patent is nonsensical.**

When Apple moved to dismiss ALD's original complaint for failure to identify a plausible basis for alleging infringement of the limitation relating to aggregating "current location," ALD presented no argument in opposition on that point. *See generally* Dkt. 23 (ALD Opp. to MTD). Now, ALD claims to have a justification for asserting infringement of that element in its original complaint—but it is nonsense.

ALD argues that it believed "current location" meant either: (1) the location was current at some time in the past when it was captured; or (2) "possible or probable" location. Dkt. 66 at 12. Neither is well-founded. Nor does ALD's new "understanding" fit with the purpose of the '158 patent, which is to determine the risk of a viral event "before such event is consummated" so that the authorities may be alerted. Dkt. 1-1 Ex. B ('158 patent) at 3:1-30. To do that, the invention analyzes an aggregation of current location information of wireless devices—if the information was not "current," the invention could not identify a risk of a viral event in time to be of any use.

ALD points to portions of the '158 patent that indicate current location information may also be filed away in a historical database for later use, but that use of location information is not part of any claim ALD presented in the charts attached to its complaint. ALD acknowledged as much at the motion to dismiss hearing; Ms. Kalra explicitly ***distinguished*** between historical data and current location data when stating that "there must be some way to include the ***current location data*** among the ***historical data***." Dkt. 63-14 (Hearing Tr.) at 9:24-10:8 (emphasis added).

Finally, ALD identifies nothing in the '158 patent that supports equating "current" with

"possible or probable." ALD cites a part of the '158 patent[6] stating that the ***safety risk*** may be possible or probable—that says nothing of whether the ***location*** is merely a possible or probable location.

ALD argues that it utilized "canons of patent law" to justify its implausible claims of infringement related to the '158 patent. Dkt. 66 at 13. Notably, ALD does not articulate what canons those are, nor does it cite any case articulating the canons. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014) (a case is "exceptional" when it "stands out from others with respect to the substantive strength . . . . considering [] the governing law"). The first rule of claim construction is that "claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). This canon of patent law shows ALD's position is baseless: "current"—consistent with its ordinary meaning and usage in the '158 patent—is not "days later."

In sum, ALD's assertion that an alleged act of aggregating location information days after the location was allegedly collected met the patent's requirement of aggregating "current location" was baseless. A "reasonable presuit investigation . . . requires counsel to perform an objective evaluation of the claim terms when reading those terms on the accused device." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011). ALD and AiPi, and their attorneys, did not do that here.

**3. ALD's argument that it had a basis for proper venue reveals that its "basis" was solely *speculation* that Apple might have created the Exposure Notification system in the Western District of Texas.**

ALD filed this case in a district where the accused service (EN) was never offered, and public information from before ALD filed this case would have alerted ALD to that fact if it had looked. Dkt. 27 (Apple Mtn. to Transfer) at 3; Dkt. 27-6 (My San Antonio Article, December 2021, "Texas will not let residents use the [EN] system"); Dkt. 27-7 (Washington Post Article, December 2021, "More than 20 states don't use [EN] at all, including large states like Florida and Texas"); Dkt. 27-8 (9to5 Mac Article, January 2021, showing EN "Not Available" in Texas). ALD later failed to oppose Apple's motion to transfer for improper venue, which included such public information. This indicates that if ALD had done a pre-suit check for public information about EN's unavailability in Texas, it

[6] The document ALD cited, Dkt. 55-1, does not exist.

would not have filed the case there. ALD does not argue that it looked for any public information that would have told it EN was not available in Texas. Instead, ALD's argument boils down to: (1) Apple has offices in Austin, Texas; and (2) "Apple does not allege that the product was not developed in Texas, used in Texas or offered for sale in Texas." Dkt. 66 at 6. Point one is true, but irrelevant. Point two is simply false, and it shows ALD misunderstands that it (not Apple) had the burden to plead proper venue that rests on a plausible basis.

The patent venue statute allows patent infringement cases to be "brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Relevant here, an alleged act of infringement includes making, using, selling, and offering to sell an accused product. 35 U.S.C. § 271 ("whoever without authority makes, uses, offers to sell, or sells any patented invention"). Public information explains EN is not and was not available in Texas, removing any doubt it was sold, offered for sale, or used in Texas. Apple explained these facts in letters to ALD and in Apple's motion to transfer. Dkt. 27 (Apple Mtn. to Transfer) at 3, 8-9; Dkt. 63-9 (Apple's Feb. 17, 2023 Ltr.) at 1-2.

As to the remaining category—making EN—no public information indicated Apple did any work on EN in Texas, and ALD identifies none. That means ALD pleaded venue solely on wishful speculation. As Apple explained in its motion to transfer, the team that developed EN is in California, and nobody in Texas worked on EN. Dkt. 27 (Apple Mtn. to Transfer) at 10-13. For the above reasons, ALD's argument that Apple has not alleged EN was not developed, used, or offered for sale in Texas ignores the record in this case. Thus, ALD's venue pleading amounted to something less than plausible—at most, only "possible" venue based on speculation.

Finally, ALD's argument that by not opposing Apple's venue motion, it saved Apple money, is egregious. Apple informed ALD well in advance of moving that ALD's venue allegations were flawed, yet ALD refused to stipulate to transfer and forced Apple to prepare and file the motion—an expensive undertaking that should have been unnecessary but for ALD's egregious conduct.

In sum, ALD's case was exceptional due to its baseless positions on "crowd risk," "current location," and venue. ALD exacerbated the problem by forcing Apple to move to transfer and by filing an amended complaint that failed to correct the flaw the Court identified as to "crowd risk."

**B. The Court should join AiPi—which ALD has not opposed—as well as the lawyers from Whitestone Law whom ALD has outed as heavily involved in preparing both complaints.**

ALD has not opposed joining AiPi, nor denied that AiPi controls ALD, nor denied that ALD is a judgment-proof shell company from which Apple will be unable to collect any fee award.[7] The Court should join AiPi and hold it liable for Apple's fees for the reasons articulated in Apple's opening brief. *See* Dkt. 62 (Apple Br.) at 17-19.

The Court should also join the two attorneys that ALD says prepared the two complaints in this case as part of "support" from AiPi: Eric Morehouse and Erik Lund, both employed by the firm Whitestone Law. Dkt. 66 at 14-15 ("William Ramey of Ramey, LLP worked with Eric Morehouse and Erik Lund in preparing the charts [of the original complaint]"), 16 ("Two law firms got together and revised the claim charts in an effort to comply with the Court's Order"); Dkt. 66-2 ¶¶ 3 ("I also used resources including litigation support services from AiPi, including Eric Morehouse and Erik Lund."), 4 (both individuals practice with Whitestone Law), 7 ("the staff of AiPi" worked on the complaint), 11 ("After the Court dismissed Plaintiff's complaint, Ramey LLP worked with his resources to revise the claim charts . . . .").

The Court should join Morehouse and Lund pursuant to Federal Rule of Civil Procedure 20(a)(2) regarding permissive joinder. Apple seeks its fees "jointly, severally, or in the alternative with respect to" the same exceptional conduct by Morehouse and Lund arising from their participation in the baseless suit, and the same "question[s] of law or fact" related to Apple's request for fees are "common" to ALD, Morehouse, and Lund. *See* Fed. R. Civ. P. 20(a)(2). And the Court has personal jurisdiction over Morehouse and Lund based on at least Morehouse's and Lund's work on the amended complaint filed in this district. *See, e.g.*, *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF, 2018 WL 3845998, *14 (N.D. Cal. Aug. 13, 2018) (finding participating in a litigation in the district amounted to an individual personally availing themselves of the forum); Cal. Code of Civ. P. § 410.10; *Abbott Power Corp. v. Overhead Elec. Co.*, 60 Cal. App. 3d 272 (1976) (applying California long-arm jurisdiction for acts performed in the state); *Manez v. Bridgestone Firestone N. Am. Tire LLC*, 533 F.3d 578, 587 (7th Cir. 2008) (applying similar long-arm statute to establish personal jurisdiction over

[7] ALD also does not deny that it filed a false Rule 7.1 Statement by failing to identify AiPi.

attorney for the purpose of § 1927 sanctions). Apple acknowledges that, if joined, Mr. Lund and Mr. Morehouse must be given the opportunity to respond and defend themselves before any award of fees and sanctions against them. *See Phigenix*, 2018 WL 2845998 at *5; *Manez*, 533 F.3d at 593-594.

Because Morehouse and Lund participated in preparing the baseless complaints in this case, the Court should join them and hold them jointly and severally liable for Apple's reasonable fees under the Court's inherent power. And since Morehouse and Lund prepared the amended claim charts, they vexatiously multiplied proceedings, and should be sanctioned under Section 1927 for the same reasons and in the same amount as Mr. Ramey and Ms. Kalra. *See generally* Dkt. 62 at 16-17 (describing sanctionable conduct); Section II.C, *infra*.

### C. Mr. Ramey and Ms. Kalra acted in bad faith or engaged in a reckless pursuit of frivolous arguments that amounted to bad faith, warranting sanctions under Section 1927 and the Court's inherent power.

For the reasons stated in Apple's opening brief, Mr. Ramey and Ms. Kalra (and now Mr. Morehouse and Mr. Lund) pursued claims any reasonable lawyer should have known were baseless. Dkt. 62 at 13-19. Ramey and Kalra argue that: (1) Ramey LLP's long history of filing exceptionally weak cases is not relevant because it relates to other parties not at issue here; (2) ALD did not seek a nuisance-value settlement; and (3) Ramey LLP "did participate in the litigation." Dkt. 66 at 6, 11-12, 15. Ramey and Kalra are wrong on all three points.

First, as explained in Apple's opening brief, numerous courts have looked to a lawyer's conduct in previous cases in evaluating whether to award fees or sanctions under § 285, § 1927, and the court's inherent power. As to § 285, Apple cited *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-cv-2766, 2023 WL 5826978 (W.D. Tenn. Sept. 8, 2023) (Dkt. 62 at 12) which considered a "pattern of engaging in frivolous patent lawsuits" as a factor in considering a case exceptional. Apple also cited *ZT IP, LLC v. VMware*, which found the case exceptional after looking at Mr. Ramey's conduct in another case:

> ZT looks worse because of its counsel's previous failure in a similar situation . . . ZT finds itself in a similar position today with ***Ramey*** again serving as counsel. The standard for exceptional case does not change based on counsel's previous failures; ***however, a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence***.

No. 3:22-cv-0970, 2023 WL 1785769, *3 (N.D. Tex. Feb. 6, 2023) (emphasis added) (Dkt. 62 at 15).

As to § 1927 and inherent power, a pattern by the attorneys—particularly when the attorneys have been made aware of the same issues previously—is probative of whether the conduct showed bad faith. Apple cited multiple cases relying on prior conduct of counsel in such a sanctions analysis. *See Craig v. PopMatters Media, Inc.*, No. 18-cv-1713-SMY, 2022 WL 3026856, *2 (S.D. Ill. Aug. 1, 2022) (cited at Dkt. 62 at 15); *Pascual v. WellsFargo Bank, N.A.*, No. 4:13-cv-02005, 2014 WL 582264, *7-8 (N.D. Cal. Feb. 13, 2014) (cited at Dkt. 62 at 16). Ramey LLP's conduct in numerous other cases—the litany of fee awards against Ramey's clients for filing and pursuing exceptionally weak arguments—is relevant to understanding whether Mr. Ramey's and Ms. Kalra's conduct in this case was the result of reckless, bad faith behavior warranting sanctions. Their pattern of behavior shows this case was not the product of a one-time lapse of judgment but rather a conscious decision to continue a persistent, long-running practice of pursuing weak cases.[8]

Second, ALD's settlement offers started below the cost of litigation and went lower as the case progressed as the effort ALD would have to expend went up—classic nuisance-value settlement behavior. ALD is correct that its first offer to Apple was $250,000[9] reflecting ALD's purported "steep reduction in the value of the patent" on October 20, 2022. Dkt. 66-4. A little over a month later, after receiving no counter-offers from Apple and after Apple moved to dismiss the complaint, ALD then offered to settle the case for $235,000 on December 2, 2022. Magic Ex. Q.[10] The following month, ALD reduced its settlement offer even further to $200,000 on January 18, 2023, again after "not receiv[ing] a counteroffer" from Apple. Magic Ex. P at 2. Contrary to Mr. Ramey's claim that "[t]ypically, the longer a case is active, the higher the demand," (Dkt. 66-2 (Ramey Decl.) ¶ 16), ALD quickly and repeatedly ***dropped*** the amount it was willing to accept over a matter of months as it faced

[8] Bizarrely, ALD asserts (without citing any cases) that consideration of published decisions in other cases involving Ramey LLP "likely violates ALD's and Ramey LLP's due process rights"—while writing that very sentence in an opposition brief that offers ALD and Ramey LLP process for responding to Apple's motion. *See* Dkt. 66 at 7.

[9] Although Apple's cost of litigation was ultimately higher than these offers, Apple is under no obligation to accept a low offer every time a nuisance suit is filed, as doing so—instead of litigating on the merits—can increase the frequency that meritless nuisance-value cases are filed against it. *See* Dkt. 62 at 15 (identifying 11 cases filed by Ramey LLP against Apple in 32 months).

[10] Magic. Exs. O through R are attached to the Supplemental Magic Declaration, concurrently filed.

the prospect of having to put in work on the case. Magic Ex. P at 2. A self-imposed 20% reduction as the case progressed reflects a clear attempt to obtain a nuisance-value settlement to avoid the need to litigate this matter, rather than any good faith belief in the merits of ALD's infringement allegations.

Third, Ramey LLP's failure to meaningfully confer resulted in ***three*** unnecessary motions in this case. With regard to Apple's motion to transfer, Apple's counsel attempted repeatedly to obtain ALD's position but Mr. Ramey never provided it, necessitating Apple spending significant time and money on preparing and filing a motion to transfer with supporting declarations from three employees. Dkt. 62 at 4-5, 14. Indeed, the document ALD cites as demonstrating that "Ramey LLP did participate in the litigation" shows the ***opposite***. The emails show that Mr. Ramey failed to attend scheduled meet-and-confers and failed to provide ALD's position regarding Apple's motion to transfer before Apple moved. *See* Dkt. 66-5 at 2 (Mar. 29, 2023 email from Apple's counsel "[f]ollowing up on [counsels'] meet and confer on March 23, Apple still has not received ALD's position regarding whether ALD opposes Apple's Motion to Transfer"), 5 (Mar. 18, 2023 email from Apple's counsel noting Mr. Ramey's failure to attend a scheduled meet-and-confer).

Throughout the case, ALD delayed or failed in responding to requests to confer, correspondence, and motions, increasing the work by Apple's counsel. The examples are numerous:

- **December 7, 2022:** ALD's Opposition to Apple's First Motion to Dismiss failed to respond regarding "current location" (Dkt. 23);
- **February 17, 2023:** ALD failed to respond to Apple's February 17, 2023 letter (Dkt. 63 (Przybylski Decl.) ¶ 2; Dkt. 63-9 (Letter));
- **March 9, 2023:** ALD failed to respond to an email and a phone call from Ms. Przybylski to confer regarding Apple's intent to move to transfer (Dkt. 63 ¶ 2; Dkt. 63-10 (email));
- **March 17, 2023:** ALD failed to attend a meet-and-confer at a time proposed by Mr. Ramey (Dkt. 63 ¶ 2; Dkt. 63-11 (emails) at 4));
- **March 23, 2023:** After finally getting on the phone with Apple to confer, ALD was unprepared to provide its position regarding transfer (Dkt. 63 ¶ 2);
- **March 29, 2023:** ALD failed to follow up to provide its position regarding transfer following the March 23 meet-and-confer (Dkt. 66-5 at 2);
- **April 14, 2023:** ALD failed to respond to Apple's motion to transfer (Dkt. 29);
- **August 23, 2023:** ALD failed to respond to Apple's August 23, 2023 letter regarding the amended complaint (Dkt. 63 ¶ 3; Dkt. 63-12 (letter));

- **October 2, 2023:** ALD failed to respond to Apple's proposed stipulation to dismiss (Dkt. 63 ¶ 5);
- **October 16, 2023:** ALD failed to respond to Apple's motion for an extension to file a motion for fees and sanctions, despite refusing to agree to the extension prior to Apple filing (Dkt. 61; Dkt. 63 ¶ 6; Dkt. 63-16 (emails)); and
- **October 24, 2023:** ALD failed to respond to Apple's motion to consider whether ALD's materials should be sealed, despite failing to consent that Apple could file the material publicly when the parties conferred before Apple filed its motion for fees (Dkt. 65-1 ¶ 3).

Ramey's and Kalra's actions also show a blatant disregard for the Court's rule requiring that a party file a Statement of Nonopposition if a party does not oppose a motion:

> **Statement of Nonopposition.** If the party against whom the motion is directed does not oppose the motion, that party ***must file with the Court a Statement of Nonopposition*** within the time for filing and serving any opposition.

L.R. 7-3(b) (emphasis added). Moreover, Ramey and Kalra cannot feign ignorance that failing to respond to motions is an acceptable litigation practice—Ramey LLP has been admonished for failing to respond to motions multiple times in other cases, resulting in fee awards. *See Traxcell Techs., LLC v. Google LLC*, No. 6:21-cv-1312-ADA, 2022 WL 3593054, *2 (W.D. Tex. Aug. 22, 2022) ("Most troublesome here is that the same counsel [Mr. Ramey] representing the same plaintiff has already been chastised by this Court for his repeated failure to file in a timely manner."); *ZT*, 2023 WL 1785769, *4 (admonishing Mr. Ramey's client for failing to respond to a motion to dismiss). Through these actions, ALD and its counsel acted recklessly and caused Apple to incur unnecessary expenses defending this litigation. *See Pascual*, 2014 WL 582264 at *7-8 (awarding sanctions "under the Court's inherent authority" where counsel's "representation of his client in this matter has been reckless," where counsel "failed to timely file an opposition").

In sum, Mr. Ramey and Ms. Kalra acted in bad faith or engaged in a reckless pursuit of frivolous arguments that amounted to bad faith, warranting sanctions under Court's inherent power. Moreover, their filing of the amended complaint vexatiously multiplied proceedings, warranting sanctions under Section 1927.

### D. The fees Apple seeks are reasonable.

By the time ALD voluntarily dismissed its case with prejudice, this case had lasted a year and

involved three substantial motions and a draft motion for sanctions under Rule 11 that Apple served on ALD but did not file because ALD dismissed its amended complaint the day before the Rule 11 safe harbor expired. Apple's opening brief explained why fees of $740,481.55 for the entire case is reasonable, and why fees of $167,706.67 for work Apple's counsel performed after ALD filed the amended complaint is reasonable. ALD attacks the numbers by: (1) oversimplifying the work behind the numbers; (2) criticizing Apple's characterization of the damages it assumed ALD might seek; (3) arguing the fees should track the AIPLA data for cases in Texas, not California; and (4) arguing the cases Apple cited involved more work than here. None of those attacks shows Apple's fee request to be unreasonable.

First, ALD oversimplifies by arguing that in the first four months of the case "Apple was willing to pay nearly half a million dollars for a letter." Dkt. 66 at 17. In fact, Apple's motion included declarations detailing the work its counsel performed during those four months, including:

- Investigated arguments under 35 U.S.C. § 101 in Oct. and Nov. (Dkt. 62-1 ¶ 21 (Magic)); Dkt. 63 ¶ 8 (Przybylski); Dkt. 63-20 ¶ 2 (Zaidi));
- Investigated non-infringement, including evaluation of ALD's claim charts and documents cited in Oct. (Dkt. 62-1 ¶ 21 (Magic); Dkt. 63 ¶ 8 (Przybylski); Dkt. 63-20 ¶ 2 (Zaidi)):
- Investigated enforceability of the Asserted Patents related to the terminal disclaimer filed during the prosecution in Oct. (Dkt. 63 ¶ 8 (Przybylski); Dkt. 63-20 ¶ 2 (Zaidi));
- Investigated non-infringement, including by interviewing witnesses in Nov., Dec., and Jan. (Dkt. 62-1 ¶ 21 (Magic); Dkt. 63 ¶ 8 (Przybylski); Dkt. 63-20 ¶ 2 (Zaidi));
- Prepared and filed motion to dismiss and reply brief in Oct., Nov., and Dec. (Dkt. 62-1 ¶ 21 (Magic); Dkt. 63 ¶ 8 (Przybylski); Dkt. 63-20 ¶ 2 (Zaidi)); and
- Prepared motion to transfer in Dec. and Jan. (Dkt. 62-1 ¶ 21 (Magic); Dkt. 63 ¶ 8 (Przybylski); Dkt. 63-20 ¶ 2 (Zaidi)).

Second, ALD criticizes Apple for the fact that it necessarily had to assume in preparing its case that ALD might seek damages well above a *de minimis* amount, and specifically, assumed the ask might fall within the range of $10 million or more. ALD would have Apple's counsel assume only a minor risk from the case, and apparently prepare its defenses to some lower standard. But Apple was well within its rights to prepare for the worst, even if that was a conservative approach. *See, e.g.*, *Eon-Net L.P. v. Flagstar Bancorp*, No. C05-2129RSM, 2010 WL 2026756, *8 (W.D. Wash. May 17, 2010)

(rejecting plaintiff's argument that the defendant unnecessarily spent time working on defenses it did not need to work on and stating "[the defendant's] thorough preparation [of its defenses] represents due regard for the seriousness and complexity of this litigation—a regard which the Court has found notably absent from plaintiff's cursory filings") aff'd in *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (affirming award of fees).

Third, this case spent the first half of its life in Texas, and after being transferred on May 31, 2023, the second half in California. The AIPLA report serves as simply one set of data in a constellation of data points for assessing reasonableness, the others being detail on work performed by counsel as well as what other courts have awarded in similar circumstances. Dkt. 62 at 19-25. ALD argues that Apple "fails to explain why its fees should not be compared to the much lower averages for Texas." Dkt. 66 at 19. But Apple included AIPLA data on ***both*** Texas and California cases in its opening brief because the case spanned both venues; the data showed a range of $170,000 to $876,000. Dkt. 62 at 25. The Court should consider data from both venues in determining fees.

Fourth, ALD's argument that the cases Apple cited "are significantly different and required more work and attorney time" is wrong. The one case ALD addressed—*Digital Empire*—lasted approximately one year and ended shortly after the plaintiff filed an amended complaint; and it involved two substantive motions (motion to dismiss and motion to stay) and one non-substantive motion (motion to withdraw), which is fewer than the four motions (three filed, one served but not filed) in this case. *See* Dkt. 62-11 (Ex. J-1) at *4. ALD addresses no other case to support its argument about the difference in amount of work. But Apple's opening brief analyzed six other cases. Dkt. 62 (Apple Br.) at 23-24. Each of those cases ended at the pleading stage or shortly after, and the fee awards ranged from $191,302.18 to $409,402.50.[11] Those cases show that Apple's requested fee, while on the high end, is anchored in data showing awards in the multiple hundreds of thousands of dollars in similar circumstances. Notably, ALD asserts that cases in similar circumstances have awarded at least fees in the range of $92,130.35 to $179,622. *See* Dkt. 66 at 19 (citing cases) ("Comparable case law suggests that DLLP's fees should have been much lower").

[11] Moreover, most cases are from three to eight years ago and do not account for inflation or increases in the cost of litigation.

Finally, ALD's cases are inapposite. All three cases are more than four decades old and relate to the award of fees beyond the normal fees awarded following a successful civil rights case[12]—not the award of fees in an exceptional patent case. In *Muscare v. Quinn*, the court affirmed a decision that ***previously*** awarded fees but declined to award the plaintiff additional fees incurred in litigating its fees motion, particularly where the plaintiff was not the prevailing party on all claims. 680 F.2d 42, 45 (7th Cir. 1982). In *Gagne v. Maher*, the court again assessed a question "whether plaintiff's attorneys can recover fees for services performed in connection with the fee application." 594 F.2d 336, 343-344 (2d Cir. 1979). But far from agreeing that the district court properly refused further compensation for exorbitant fees, the court "remand[ed] for further consideration of the question whether the fee award ***should be increased*** to compensate plaintiff's attorneys." *Id*. at 345 (emphasis added). Finally, in *Lund v. Affleck*, the court rejected the defendant's (there, the non-prevailing party) arguments that the fees were exorbitant and affirmed the award. 587 F.2d 75, 77-78 (1st Cir. 1978).

In sum, Apple's requested fees are reasonable for the amount of work its counsel performed.

## III. CONCLUSION

For the foregoing reasons, Apple requests that the Court:

- find this case exceptional and award attorney fees to Apple in the amount of $740,481.55 pursuant to 35 U.S.C. § 285 and the Court's inherent power;
- join AiPi and hold it jointly liable for any fee award under 35 U.S.C. § 285;
- join Eric Morehouse and Erik Lund for their role in preparing the complaints in this case;
- hold ALD, Ramey LLP, William Ramey, Susan Kalra, AiPi, Eric Morehouse, and Eric Lund jointly and severally liable for any fee award under the Court's inherent power; and
- pursuant to 28 U.S.C. § 1927, hold Ramey LLP, William Ramey, Susan Kalra, Eric Morehouse, and Erik Lund jointly and severally liable for Apple's fees of $167,706.67 resulting from their vexatious, bad faith filing of the first amended complaint, and to deter Ramey LLP from future conduct of a similar nature.

[12] Fee-shifting in civil rights cases also presents a very different framework from patent cases that is subject to a greater risk of exorbitant billing. In civil rights and voting rights cases, fees are shifted under 42 U.S.C. § 1988 and 42 U.S.C. § 1973*l*(e), respectively, with a default assumption fees will be awarded to a prevailing plaintiff, requiring the "district court [to] (unfortunately) bear[] the burden of disciplining the market" where there is "little incentive to negotiate a rate structure" prior to the litigation given the expectation the fees will be shifted. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 484 F.3d 162, 164 (2d Cir. 2007), *amended on other grounds by Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182 (2d Cir. 2008).

DATED: November 7, 2023

By: */s/ Peter C. Magic*
Peter C. Magic

Peter C. Magic (CA SBN 278917)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901
Email: pmagic@desmaraisllp.com

*Counsel for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served via the Court's CM/ECF system per Civil Local Rule 5.4 on November 7, 2023.

Dated: November 7, 2023

*/s/ Peter C. Magic*
Peter C. Magic